HOLMES v HAUGHTON ELEVATOR COMPANY

Docket No. 59757. Argued June 6, 1978 (Calendar No. 4).—Decided
December 26, 1978. Rehearing denied 406 Mich 1102.

Kenneth P. Holmes brought an action for damages against his
former employer, Haughton Elevator Company, alleging that
his transfer and subsequent layoff from employment were
motivated by age discrimination. The Wayne Circuit Court,
John D. O'Hair, J., granted accelerated judgment for the de-
fendant on the ground that the administrative remedy in the
Michigan State Fair Employment Practices Act was the plain-
tiff's exclusive remedy for age discrimination. The Court of
Appeals, N. J. Kaufman, P.J., and V. J. Brennan and O'Hara,
JJ., reversed and remanded for further proceedings (Docket No.
30097). Defendant appeals. *Held:*

The general rule is that where a new right is created or a
new duty imposed by statute, the statutory remedy provided for
its enforcement is exclusive. However, a common-law exception
to the general rule has been recognized where the statutory
rights infringed are civil rights. The right to be free from age
discrimination in private employment, like the right to be free
from racial discrimination in private employment, is a civil
right created by statute. There is no reason to conclude that
the Legislature intended that distinctive treatment be accorded
violation of the specific civil right to be free of racial discrimi-
nation as opposed to violation of any of the other statutorily
protected civil rights. Therefore, the plaintiff's common-law
remedy for redress of his statutory civil right to be free from
age discrimination in private employment may be pursued in

REFERENCES FOR POINTS IN HEADNOTES

[1, 4-6, 8, 9] 15 Am Jur 2d, Civil Rights § 261 *et seq.*
    Recovery of damages as remedy for wrongful discrimination under
    state or local civil rights provisions. 85 ALR3d 351.
[2, 7] 15 Am Jur 2d, Civil Rights § 98 *et seq.;* 226 *et seq.*
    Validity and construction of labor legislation prohibiting discrimi-
    nation on account of age. 29 ALR3d 1407.
    Construction and application of age Discrimination in Employment
    Act of 1967 (29 USCS §§ 621 et seq.). 24 ALR Fed 808.
[3] 15 Am Jur 2d, Civil Rights § 226 *et seq.*

addition to the statutory remedies administered by the Civil Rights Commission.

Affirmed.

Justice Moody concurred with the analysis and result reached by Chief Justice Kavanagh.

1. It is the fundamental nature of the right involved, *i.e.,* that a person be free from discrimination whether the discrimination be based on race or age, that compels the conclusion that a cumulative remedy is warranted. The Legislature in reenacting the Elliott-Larsen Civil Rights Act codified the Court's previous decision concerning racial discrimination by expressly providing for direct access to circuit court for an aggrieved party not only with a claim of race discrimination, but also with age, sex, national origin, religion, handicap and marital status claims. The legislative history of the reenactment is persuasive that the Legislature felt strongly that a "direct access" provision was essential to the act.

2. There is no merit in the suggestion that the retroactive application of the act's procedural revisions would add to an already overcrowded court docket. Since the Court's previous decision concerning claims of racial discrimination there has been no significant increase in the number of civil rights cases being heard by the appellate courts of this state. But more importantly, this argument pales in contrast with the essential issues to be addressed in civil rights matters to which the Court should give the highest priority.

Justice Coleman, joined by Justice Levin, would reverse the decision of the Court of Appeals on the ground that the plaintiff's administrative remedy was exclusive under the former Michigan State Fair Employment Practices Act and would overrule *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971):

1. When the Legislature creates a remedy unknown to the common law and provides an administrative agency to administer grievances, then exclusive jurisdiction to hear such claims lies with that administrative body, unless otherwise provided by the Legislature.

2. The former statute treated each category of proscribed discrimination as equally onerous. Race should be treated no differently than age. The act in effect at the time this action began charged the Civil Rights Commission with hearing civil rights complaints. Because the Court made a judicial exception for one of the proscribed discriminatory acts to permit a complainant who missed the time requirements for administra-

tive review to go directly to the circuit court the Court is now in the position of condoning an absurd result by saying that other bases of prohibited discrimination are to be treated differently from that of race, or compounding the initial mistake of saying, in effect, that the Legislature did not mean what it said.

3. Administrative hearing panels are intended to provide expertise in a given field, give speedier resolutions to problems of citizens, and relieve the courts which are presently inundated with litigation. To leave standing this precedent leaves open the door to judicial manipulation of other statutes relating to administrative law. The jurisdiction of administrative agencies is exclusively a legislative matter and correctly so.

75 Mich App 198; 255 NW2d 6 (1977) affirmed.

### OPINION OF THE COURT

1. CIVIL RIGHTS — COMMON LAW — REMEDIES — STATUTES.

   The general rule is that where a new right is created or a new duty imposed by statute, the statutory remedy provided for its enforcement is exclusive; however, a common-law exception to the general rule has been recognized where the statutory rights infringed are civil rights.

2. CIVIL RIGHTS — AGE DISCRIMINATION — RACIAL DISCRIMINATION — CIVIL RIGHTS ACT.

   The Legislature, in drafting the Michigan State Fair Employment Practices Act, later part of the Civil Rights Act, did not intend that distinctive treatment be accorded to a violation of the statutory civil right to be free from racial discrimination in private employment as opposed to violation of any of the other statutorily enumerated civil rights, e.g., the right to be free from age discrimination (MCL 37.2102, 423.301; MSA 3.584[102], 17.458[1]).

3. CIVIL RIGHTS — AGE DISCRIMINATION — MASTER AND SERVANT — COMMON LAW — REMEDIES.

   An employee's common-law remedy for redress of his statutory civil right to be free from age discrimination in private employment may be pursued in addition to the statutory remedies administered by the Civil Rights Commission (Const 1963, art 5, § 29; MCL 423.301; MSA 17.458[1]).

CONCURRING OPINION BY BLAIR MOODY, JR., J.

4. CIVIL RIGHTS — COMMON LAW — REMEDIES — STATUTES.

   *The Legislature by its reenactment of the Elliott-Larsen Civil*

*Rights Act codifying a judicial decision concerning direct access to circuit courts for claims of racial discrimination and by extending it to certain other civil rights discrimination claims shows a strong feeling that a "direct access" provision was essential to the act; it is the fundamental nature of the right involved, i.e., that a person be free from discrimination in private employment whether based on race or age, that compels the conclusion that a remedy in circuit court is warranted in addition to the statutory remedies administered by the Civil Rights Commission (Const 1963, art 5, § 29; MCL 37.2801, 423.301; MSA 3.548[801], 17.458[1]).*

5. CIVIL RIGHTS — COMMON LAW — COURTS — REMEDIES.

*There is no merit in the argument that the retroactive application of the provisions of the Elliott-Larsen Civil Rights Act permitting direct access to circuit court for certain claims of civil rights violation would result in overcrowded court dockets; the courts should give the essential issues to be addressed in a civil rights claim the highest priority (MCL 37.2801; MSA 3.548[801]).*

DISSENTING OPINION BY COLEMAN, J.

6. ADMINISTRATIVE LAW — COMMON LAW — REMEDIES — STATUTES.

*The exclusive jurisdiction to hear a claim for a remedy created by the Legislature and unknown to the common law lies with an administrative agency which the Legislature provides to administer such claims, unless otherwise provided by the Legislature.*

7. CIVIL RIGHTS — AGE DISCRIMINATION — RACIAL DISCRIMINATION — STATUTES.

*The former Michigan State Fair Employment Practices Act treated each category of proscribed discrimination as equally onerous; racial discrimination should be treated no differently than age discrimination under the statute (MCL 423.301; MSA 17.458[1]).*

8. CIVIL RIGHTS — COMMON LAW — STATUTES.

*The former Michigan State Fair Employment Practices Act charged the Civil Rights Commission with hearing civil rights complaints; the creation of a judicial exception to permit a complainant who missed the time requirements for administrative review to go directly to a circuit court for redress of his statutory civil right is erroneous because it says, in effect, that the Legislature did not mean what it said (MCL 423.307[b]; MSA 17.458[7][b]).*

9. ADMINISTRATIVE LAW — COMMON LAW — JURISDICTION — STAT-
    UTES.

    *Administrative hearing panels are intended to provide expertise
    in a given field, give speedier resolutions to problems of citizens
    and relieve the courts of some litigation; the jurisdiction of
    administrative agencies is exclusively a legislative matter and
    judicial exceptions should not be created or left standing.*

*James F. Finn* and *Mark S. Michael* for plaintiff.

*Riley & Roumell* (by *John F. Brady* and *Thomas
M.J. Hathaway)* for defendant.

Amici Curiae:

*Dickinson, Wright, McKean, Cudlip & Moon* (by
*Thomas G. Kienbaum)* for Chrysler Corporation.

*Sheldon J. Stark* for Michigan Trial Lawyers
Association.

KAVANAGH, C.J. *(to affirm).* Defendant employed
plaintiff as an elevator mechanic from 1967 until
December of 1974, when plaintiff was transferred
from the maintenance section to the service sec-
tion because, according to plaintiff's complaint,
"defendant company wanted to make room for
younger men with less seniority". Defendant ad-
mitted the transfer but denied the reason ascribed.

    On December 6, 1974, plaintiff was informed
that there was no work, and laid off, although the
complaint states that he continued to work a few
days each month following the layoff.

    Plaintiff filed a charge of age discrimination
with the Michigan Civil Rights Commission on
June 9, 1975, approximately 184 days after the
layoff. On March 11, 1976, the commission dis-
missed the complaint because it was not filed

within the 90 days required by § 7(b) of the Michigan State Fair Employment Practices Act (FEPA).[1]

Subsequently, on April 9, 1976, plaintiff filed a complaint in Wayne Circuit Court against defendant alleging that age discrimination motivated plaintiff's transfer and layoff. Claiming that the administrative remedy contained in the FEPA was plaintiff's exclusive remedy for age discrimination in private employment, defendant-employer filed a motion to quash service of process and for accelerated judgment of dismissal. The trial judge, reasoning that material distinctions in law exist between racial and age discrimination, declined to extend our holding in *Pompey v General Motors Corp*, 385 Mich 537; 189 NW2d 243 (1971), in which this Court held that a black plaintiff who had not filed a timely complaint with the Michigan Civil Rights Commission was not precluded from maintaining a civil suit against his employer. The trial court entered a judgment of dismissal with prejudice on July 28, 1976. The Court of Appeals reversed, finding that *Pompey* was equally applicable to age discrimination. 75 Mich App 198; 255 NW2d 6 (1977).[2]

We affirm. In *Pompey, supra,* we acknowledged that plaintiff's complaint to the Civil Rights Commission was properly dismissed as being untimely filed. We noted, however, that plaintiff in his complaint did not assert entitlement to the statutory remedy provided in the FEPA, but rather asserted his right to a cumulative judicial remedy for redress of his civil right to be free from discrimination in private employment. We held that such a cumulative judicial remedy could be main-

---

[1] MCLA 423.307(b); MSA 17.458(7)(b).

[2] Another panel of the Court of Appeals reached a similar conclusion in *Hernden v Consumers Power Co,* 72 Mich App 349; 249 NW2d 419 (1976).

tained in addition to the remedial machinery provided by the statute for vindication of the statutorily created right to be free from discrimination in private employment.

While we recognized that there had been no common-law remedy for race discrimination in private employment and that the absence of such a remedy was ordinarily significant in determining the exclusiveness of the statutory remedy, we nevertheless forged an exception. Looking to prior Michigan case law we found support in civil rights cases for an exception to the general rule that where a new right is created or a duty is imposed by statute, the statutory remedy provided for enforcement is exclusive. In *Pompey* we continued the exception to that rule. We additionally predicated our decision upon our conviction that the constitutional delegates did not intend, in creating the Civil Rights Commission, to vest it with exclusive jurisdiction over civil rights cases.[3]

There is nothing in our decision in *Pompey* which suggests that the holding is to be limited to the securing of one's civil right to be free from racial discrimination in private employment. The legislation which proscribed such racial discrimination, also proscribed discrimination on the basis of age, sex, color, religion, national origin or ancestry. MCL 423.301 *et seq.;* MSA 17.458(1) *et seq.* There is no reason to conclude that the Legislature, in drafting the FEPA, now part of the Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101), *et seq.,* intended that distinctive treatment be accorded violation of the specific civil right to be free from racial discrimination as opposed to violation of any of the other statutorily protected civil

---

[3] *Pompey v General Motors Corp,* 385 Mich 537, 558-559, fn 19; 189 NW2d 243 (1971).

rights. The right to be free from racial discrimination and the right to be free from age discrimination in private employment are both statutory civil rights created by the FEPA and continued in Civil Rights Act.[4]

*Pompey* does not permit, and we do not perceive, a basis that prompts us to accord age discrimination lesser treatment. Therefore, our decision to extend a cumulative judicial remedy to *Pompey* for racial discrimination in private employment must likewise be extended to the age discrimination complainant in the instant case.

Accordingly we affirm the Court of Appeals and remand to the circuit court for a hearing on the merits. No costs, a public question involved.

WILLIAMS, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred with KAVANAGH, C.J.

BLAIR MOODY, JR., J. *(concurring).* I concur with the analysis and result reached by Chief Justice KAVANAGH.

This Court's opinion in *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971), and the result we reach today are clearly distinguishable from our decision in *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977). In *Lamphere* we adhered to the general rule that where a new right is created by statute the remedy for enforcement of that right is exclusive. *Pompey* and today's extension of *Pompey* represent a narrow exception to this rule.

The reason for framing the *Pompey* exception

---

[4] Also persuasive in arriving at a determination in the instant matter that an aggrieved party may pursue a cumulative judicial remedy for the violation of any civil right is the fact that the FEPA, reenacted in the Civil Rights Act, MCLA 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* now expressly provides for direct access to the circuit court. MCLA 37.2801; MSA 3.548(801).

focuses on the type of rights involved. Anticipating future cases, we noted in *Lamphere:*

"[W]hile for purposes of discussion here, we accept *Pompey* for the general proposition cited, that case is easily distinguished from the case at bar. *Pompey* dealt with the exclusive-cumulative dichotomy regarding statutory remedies in the context of fundamental or *civil* rights. The instant case involves damages arising out of the alleged violation of *proprietary* rights." (Emphasis in original.) *Lamphere, supra,* 126, fn 9.

It is, therefore, the fundamental nature of the right involved, *i.e.,* that a person be free from discrimination whether the discrimination be based on race or age, that compels us to conclude a cumulative remedy is warranted.

There are other cogent reasons for amplifying *Pompey.* We are cognizant of the fact that the Legislature in reenacting the Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* codified this Court's decision in *Pompey* by expressly providing for direct access to circuit court for an aggrieved party. MCL 37.2801; MSA 3.548(801). Not only was direct access granted for claims of race discrimination, but also for age, sex, national origin, religion, handicap and marital status claims.

In examining the legislative history of the reenactment, we are persuaded the Legislature felt strongly that a "direct access" provision was essential to the act. While the original bill in the House, House Bill 4055, contained no provision granting direct access, the direct access provision appeared in the first substitute to House Bill 4055. In all, six substitute bills were presented to the Legislature and while numerous changes and deletions were made in the original bill and all the

substitutes, the direct access provision remained intact with only minor procedural revisions. The direct access provision in the Michigan act aligns Michigan with other jurisdictions which have similar provisions.[1]

The import of the new Michigan direct access provision was emphasized by Chief Judge Cornelia G. Kennedy in her decision in *Schroeder v Dayton-Hudson Corp,* 448 F Supp 910 (ED Mich, 1977), *rev'd in part on reh,* 456 F Supp 650 (ED Mich, 1978).

*Schroeder,* much like the case before us, involved an age discrimination claim where plaintiff sought direct access to the courts without having filed a complaint with the Michigan Civil Rights Commission within 90 days after the alleged act of discrimination. In granting direct access, the *Schroeder* court, applying precedent of this Court, persuasively reasoned that the reenacted Civil Rights Act should be given retroactive application.[2]

Additionally, we see no merit in the suggestion that by extending *Pompey* we are adding to an

---

[1] For example, District of Columbia Human Rights Act, D C Code § 6-2296 (Supp V, 1978); N Y Exec Law, art 15, § 297, paragraph 9. We note that although both the District of Columbia and New York statutes grant direct access to the courts, this is not a cumulative remedy. A person must choose either to go directly to court or to the administrative agency.

[2] Chief Judge Kennedy cites a series of cases from this Court to support her position regarding retroactive application. See, *e.g., Lafayette Transfer & Storage Co v Michigan Public Utilities Comm,* 287 Mich 488, 491; 283 NW 659 (1939) (upon amendment of a procedure, the only means of pursuing the prior existing remedy is through the amendment); *McAvoy v H B Sherman Co,* 401 Mich 419, 457; 258 NW2d 414 (1977) (procedural amendment will operate retrospectively unless the Legislature has clearly shown a contrary intent). Chief Judge Kennedy concludes as follows:

"There is no reason to believe that the Michigan Supreme Court would not decide that the Civil Rights Act's procedural revisions should not be applied retroactively in this case." *Schroeder, supra,* 456 F Supp 652.

already overcrowded court docket. While we must be concerned with the high volume of cases being filed with the courts, we note that since *Pompey* there has been no significant increase in the number of civil rights cases being heard by the appellate courts of this state.

But more importantly, we find the overcrowded court docket argument pales in contrast with the essential issues to be addressed in civil rights matters. As the United States Supreme Court has recognized congressional intent to give the "highest priority" to civil rights claims, *Alexander v Gardner-Denver Co,* 415 US 36, 47; 94 S Ct 1011; 39 L Ed 2d 147 (1974); *Newman v Piggie Park Enterprises, Inc,* 390 US 400, 402; 88 S Ct 964; 19 L Ed 2d 1263 (1968), this Court should do no less.

COLEMAN, J. *(to reverse).* In this appeal we are asked to decide whether the holding in *Pompey v General Motors Corp,* 385 Mich 537; 189 NW2d 243 (1971) (that there existed initial jurisdiction in the circuit court which derived from a private cause of action for racial discrimination in private employment), should be extended to claims of age discrimination. We would determine that *Pompey* was erroneously decided and hold that plaintiff's administrative remedy was exclusive under the act then in effect.

I

Plaintiff was employed as an elevator mechanic by defendant from 1967 to December of 1974. On December 6, 1974, following a transfer from the maintenance to the service department, plaintiff was told that there was no work and was laid off. Plaintiff was 55 years old.

On June 9, 1975, 184 days after his layoff,

plaintiff filed a claim of age discrimination with the Michigan Civil Rights Commission. The complaint was dismissed as untimely because § 7(b) of the Michigan State Fair Employment Practices Act (FEPA) required such a charge to be filed within 90 days.[1] Belatedly, plaintiff filed a complaint in circuit court on April 9, 1976 alleging age discrimination.

The trial court determined that the administrative remedy provided in FEPA was exclusive and saw sufficient material distinctions between age and racial discrimination to decline to extend *Pompey.* Plaintiff's action was dismissed with prejudice. The Court of Appeals, seeing no basis for distinguishing age and racial discrimination, reversed. 75 Mich App 198; 255 NW2d 6 (1977).

Finding *Pompey* to have been wrongly decided, we would reverse the decision of the Court of Appeals and reinstate the judgment of the trial court. When the Legislature creates a remedy unknown to the common law and provides an administrative agency to administer grievances, then exclusive jurisdiction to hear such claims lies with that administrative body, unless otherwise provided by the Legislature. However, because of the subsequently enacted Elliott-Larsen Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.,* which expressly provides for direct access to the circuit court,[2] this opinion is of little juris-

---

[1] MCL 423.307(b); MSA 17.458(7)(b) read, in pertinent part:

"Any individual claiming to be aggrieved by an alleged unlawful employment practice may, by himself or his agent, make, sign and file with the board, *within 90 days after the alleged act of discrimination,* a verified complaint in writing * * *." (Emphasis added.)

[2] The act, effective March 31, 1977, provides:

"(1) A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both.

"(2) An action commenced pursuant to subsection (1) may be brought in the circuit court for the county where the alleged violation

prudential value other than as a reflection upon the purpose of legislatively provided administrative hearings and the foreseeable effects of adherence to and expansion of *Pompey.* Therefore, our views will be set forth with some brevity.

## II

Essentially, plaintiff's argument that age should be treated the same as racial discrimination has merit if we are to abide by what we believe to have been an erroneous conclusion in *Pompey.* In that decision, the Court excised from the FEPA the requirement that race discrimination cases be heard before the Civil Rights Commission. The same legislation contained prohibitions against discrimination on the basis of age, sex, religion, color, national origin or marital status.

We agree with the Chief Justice that the statute treated each category of discrimination as equally onerous. Race should be treated no differently than age. Applying *Pompey,* Justice KAVANAGH finds that all discrimination cases under FEPA could go either to the commission or the circuit court. It is here that we part.

The act in effect at the time of this action charged the commission with hearing civil rights complaints. The appeals came to the courts. Because we made a judicial exception for one of the proscribed discriminatory acts, we find ourselves in the position of either condoning an absurd result by saying other bases of prohibited discrimination are to be treated differently from that of race, or

occurred, or for the county where the person against whom the civil complaint is filed resides or has his principal place of business.

"(3) As used in subsection (1), 'damages' means damages for injury or loss caused by each violation of this act, including reasonable attorney's fees." MCL 37.2801; MSA 3.548(801).

compounding the initial mistake by saying, in effect, that the Legislature did not mean what it said. If complainants missed the time requirements for administrative review, the jurisdictional provision meant nothing. Complainants always could go directly to the circuit court.

The fact that the statute later was changed to provide for primary jurisdiction in the circuit court (possibly because *Pompey* placed the commission in an anomalous position and rendered the statutory limitations meaningless) does not change Mr. Holmes' legal position in this litigation.

### III

The problem with permitting *Pompey* to continue (and expand) as precedent lies in its application to other legislative provisions and concomitant administrative agencies regarding their jurisdiction, operation and powers. This Court rejected such an attempt to utilize *Pompey* in *Lamphere Schools v Lamphere Federation of Teachers,* 400 Mich 104; 252 NW2d 818 (1977). We find the underlying policies of *Lamphere* and *Pompey* irreconcilable.

Philosophically, administrative hearing panels are intended to provide expertise in a given field and, hopefully, speedier resolutions in areas of the multitudinous problems of citizens.

Importantly, they also are intended to relieve the courts.

The courts at this time in history are inundated with litigation involving almost every societal and individual concern. Learned judges and the practicing bar addressing nationwide court congestion have recommended *inter alia* expanded use of

administrative hearings, arbitration, mediation, etc., with access to the courts on appeal.

If we leave standing in Michigan the *Pompey* precedent, we leave open the door to judicial manipulation of other statutes relating to administrative law. We can extract or subtract from or enlarge jurisdiction as we personally wish. These are exclusively legislative matters and correctly so.

For these reasons, among many others, we would overrule *Pompey* and reverse the Court of Appeals below. The judgment of the trial court should be reinstated. The holding necessarily would be prospective as to all other cases.

Reverse.

LEVIN, J., concurred with COLEMAN, J.