**Eva MOLL, Plaintiff,**

v.

**PARKSIDE LIVONIA CREDIT UNION, a State-Chartered Credit Union; Leslie Burrell; William Munch; Robert Hall; Jack Karagozian; Robert Bellfy; John Fieber; and Edward Jagdmann, all jointly and severally, Defendants.**

No. 80–73856.

United States District Court,
E. D. Michigan, S. D.

Oct. 30, 1981.

Richard J. Clark, Southfield, Mich., for plaintiff.

Dennis R. Pollard, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

### I FACTS

This is a sex discrimination action brought by Eva Moll (hereinafter Plaintiff) against Parkside Livonia Credit Union (hereinafter Defendant). In 1975, Plaintiff began employment with Defendant in the position of assistant manager. This continued until mid 1977. At that time, due to the illness of Defendant's manager, Plaintiff was appointed to the position of manager of Defendant credit union.

In February of 1978, Plaintiff was demoted to the position of bookkeeper. The demotion was accompanied by a commensurate reduction in wages and employee benefits. Plaintiff claims that she was demoted because of gender-based discrimination. Furthermore, Plaintiff insists that even after her demotion to bookkeeper, she was required to do the work of an assistant manager.

Defendant, on the other hand, insists that the demotion had nothing to do with sex discrimination. Moreover, Defendant denies that Plaintiff was required to—in effect—work as an assistant manager while she was paid as a bookkeeper.

Plaintiff claims that Defendant violated the following statutes: the Elliott-Larsen Act, M.C.L.A. § 37.2101 et seq; Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e et seq; the Federal Equal Pay Act, 29 U.S.C.A. § 206(d). Plaintiff seeks to recover back pay and compensatory and punitive damages under both the Elliott-Larsen Act and Title VII. The compensatory damages are designed to cover the medical costs that resulted from the mental anguish that Plaintiff suffered from the alleged discrimination. The punitive damages are sought in order to compensate Plaintiff for the humiliation and embarrassment that stemmed from the alleged discrimination.

Defendant argues that Plaintiff is entitled to nothing more than back pay. Pursuant to this position, Defendant has submitted a Rule 12(c) Federal Rules of Civil Procedure Motion asking this court to grant judgment on the pleadings with respect to Plaintiff's claim for compensatory and punitive damages under the Elliott-Larsen Act.

Defendant's theory is based on a belief that the exclusive remedy provision of the Michigan Worker's Compensation Act bars Plaintiff from recovering compensatory damages under the Elliott-Larsen Act. Furthermore, Defendant has, under Rule 12(f) of the Federal Rules of Civil Procedure, asked this Court to strike Plaintiff's demand for punitive damages under the Elliott-Larsen Act on the ground that such damages are not recoverable under Michigan law.

Defendant has also moved for a judgment on the pleadings with respect to Plaintiff's demand for compensatory and punitive damages under Title VII. Moreover, Defendant has moved to strike Plaintiff's demand for a jury trial under Title VII. Finally, contending that Plaintiff has

no basis for an Equal Pay Act claim, Defendant has moved for a judgment on the pleadings with respect to the Equal Pay Act issue.

Defendant's motions compel this Court to consider a number of important questions in the field of employment discrimination law. The various questions will be dealt with herein.

## II PLAINTIFF'S ELLIOTT–LARSEN COMPENSATORY DAMAGE CLAIM and the WDCA EXCLUSIVE REMEDY BAR

The first issue to be decided is whether the exclusive remedy provision of the Michigan Worker's Disability Compensation Act (WDCA) (M.C.L.A. § 418.131) operates as a bar to Plaintiff's claim for mental and physical injury damages under the Michigan Civil Rights Act, M.C.L.A. § 37.2101 *et seq.* This difficult issue has been the source of a split of authority within this district. The then Chief Judge of the district, Judge Kennedy, has opined that the exclusive remedy provision of WDCA is indeed a bar to mental damages under the Federal Equal Pay Act. Judge Churchill has expressed a similar view. *See Branham v. Massey Ferguson,* Civ. No. 76–70345 (January 9, 1978). On the other hand, Judge Feikens has written an opinion that narrows the applicability of the WDCA bar in employment discrimination cases. For the reasons to be set out below, this Court has come to the conclusion that Judge Feikens has advanced the better argument.

The point of departure in any analysis of the instant issue is the decision of the Michigan Court of Appeals in *Stimson v. Bell Telephone Co.,* 77 Mich.App. 361, 258 N.W.2d 227 (1977). In *Stimson,* the Court held that the WDCA bar applied where Plaintiff sought damages for a mental breakdown that was allegedly caused by gender-based employment discrimination. Plaintiff's breakdown led to an inability to continue employment in the *Stimson* case.

Although the *Stimson* result was quite clear, the rationale behind the result was not entirely consistent. Throughout, the court emphasized that the nature of the damages sought was extremely important in deciding whether the exclusive remedy bar applied. The Court pointed out that this was necessary because sex discrimination is not usually regarded as within the scope of WDCA. If, however, the damages sought were to be the guide, then a sex discrimination claim seeking damages for a mental breakdown could be read to fall within the exclusive remedy provision. *See Stimson, supra* at 366–67, 258 N.W.2d 227. This followed from the fact that WDCA provides damages for mental injuries arising out of employment. *See Stimson, supra* at 366–67, 258 N.W.2d 227.

Later in the opinion, however, the Court stressed that Plaintiff's injury had led to disability. In a spirit of approval, the Court cited Professor Larson for the proposition that physical disability resulting from employment discrimination was close enough to the type of situation contemplated by WDCA to invoke the WDCA exclusive remedy bar. *See Stimson, supra* at 368–69, 258 N.W.2d 227.

Judge Kennedy interpreted *Stimson* as a directive to look to the type of damages sought rather than the elements of the claim that caused the damages. This was the gist of Judge Kennedy's opinion in *Schroeder v. Dayton-Hudson,* 456 F.Supp. 652, 653 (1978). If the damages sought were covered by WDCA, then, according to Judge Kennedy, the exclusive remedy provision barred additional damages. Nowhere in the *Schroeder* opinion is there any indication that the injury caused had to amount to a disability. *See generally Schroeder, supra.*

This trend was halted in 1979 when Judge Feikens decided *Freeman v. Kelvinator,* 469 F.Supp. 999 (1979). In *Freeman,* Judge Feikens expressed strong disagreement with the policy of using WDCA to bar damages for the entirely distinct phenomenon of employment discrimination. The Chief Judge argued that the purposes of the two statutes were dramatically different, and therefore, it would be most inappropriate to apply the WDCA bar to an

employment discrimination action. *See Freeman, supra* at 1000.

In analyzing the significance of *Stimson*, Judge Feikens concentrated on the *Stimson* court's discussion concerning disability. These remarks were, according to Judge Feikens, controlling. As a result, *Freeman* held that the exclusive remedy bar is applicable only where the mental injuries caused by employment discrimination lead to actual disability.

This Court will, of course, look to the statute in question as a first resort. The Michigan Civil Rights Act, better known as the Elliott-Larsen Act, was designed to outlaw discrimination in employment, public accommodation and education. *See* M.C. L.A. § 37.2102. It is readily apparent that the Elliott-Larsen Act is an unusually wide ranging civil rights Act. The protected classifications, for example, include height, weight, and marital status as well as age, race, religion, national origin and sex.[1] This contrasts with Title VII of the Federal Civil Rights Act, which includes only race, sex, religion and national origin within its protective ambit.[2] Moreover, the Elliott-Larsen Act provides for both legal and equitable remedies. *See* M.C.L.A. § 37.2801. Title VII, on the other hand, provides for equitable remedies only.[3]

Although the Elliott-Larsen Act is a more sweeping measure than Title VII, the federal statute is not totally irrelevant in the Michigan Civil Rights scheme. The Michigan Civil Rights Commission, a state agency authorized to administer the Elliott-Larsen Act, *see* M.C.L.A. § 37.1601, has issued a set of interpretive guidelines designed to clarify the Act. These guidelines indicate that it is appropriate to consider Title VII

law as a guide in interpreting the Elliott-Larsen Act.[4] In light of this, the Title VII case of *Alexander v. Gardner-Denver*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) comes to mind. In *Gardner-Denver*, the Supreme Court laid to rest any doubts about the separate and distinct nature of a Title VII action filed by the allegedly aggrieved employee. The Court pointed out that Title VII rights and remedies are entirely independent from the provisions of other statutes. *See generally Alexander v. Gardner-Denver, supra.* If the Michigan Civil Rights Commission guidelines are to be taken seriously, then *Gardner-Denver* must be considered in deciding the instant case.

Finally, this Court cannot resist a reference to the well-known Michigan Supreme Court cases of *Pompey v. General Motors Corp.*, 385 Mich. 537, 189 N.W.2d 243 (1971) and *Holmes v. Haughton Elevator Co.*, 404 Mich. 36, 272 N.W.2d 550 (1978). These two cases stand for the proposition that racial discrimination claims (*Pompey*) and age discrimination claims (*Holmes*) can be brought even where the plaintiff does not timely file within the Elliott-Larsen Act time limit. Here too, the Michigan protection against discrimination exceeds the protection afforded by federal statutes.[5] This Court reads *Pompey* and *Holmes* as Michigan Supreme Court statements underscoring the special importance of protection against discrimination. It is not difficult to read *Pompey* and *Holmes* as implicit authority for the proposition that the right to be free from discrimination is separate and independent, and is deserving of special legal status.[6]

1. *See* M.C.L.A. § 37.2202; § 37.2203; § 37.2204; § 37.2205.

2. *See* 42 U.S.C.A. § 2000e-2(a). The federal government does, of course, also protect against age discrimination. This protection is extended by a separate statute, the Age Discrimination in Employment Act. *See* 42 U.S. C.A. § 623 *et seq.*

3. *See* 42 U.S.C. § 2000e-5(g).

4. *See* 8A Fair Emp. Prac. Manual 455:1091.

5. Title VII filing requirements are, as a rule, strictly enforced. *See e. g., Friend v. Leidinger,* 446 F.Supp. 361 (CA 4, 1978). There is, however, a school of thought that would allow the Title VII filing deadline to be relaxed in the interest of equity. *See e. g., Hart v. J. T. Baker Chemical Co.,* 598 F.2d 829 (CA 3, 1979).

6. This is the purport of Justice Moody's remarks explaining the majority opinion. *See* 404 Mich. 36, 44, 272 N.W.2d 550.

Against this general background, it is clear that *Stimson* should be narrowly construed. Moreover, even if this Court based its decision strictly on the *Stimson* rationale, the result would still be the same. It simply cannot be ignored that the *Stimson* court depended heavily on the fact that the essence of the action in question was physical injury. *See Stimson v. Bell Telephone Co.*, 77 Mich.App. 361, 368–69, 258 N.W.2d 227 (1977).

Indeed, this Court will, like Judge Feikens, readily acknowledge that the overall purpose of the Elliott-Larsen Act is a factor in this decision. The Elliott-Larsen Act is a trumpet call that the state of Michigan will accord protection against irrelevant discrimination. All evidence indicates that the Michigan lawmakers had utterly no idea that the Act would, in any respect, be limited by the WDCA. Furthermore, the *Stimson* case means nothing more than that where employment discrimination results in physical disability, the WDCA exclusive remedy bar takes effect. In other situations, there is no persuasive reason to believe that the remedies available under the Elliott-Larsen Act should be abridged.

█ In the instant case, Plaintiff did not suffer a physical disability. Her mental and physical damages were limited to medical expenses only. Here, unlike *Stimson*, the mental damages did not raise a disability. Hence, Defendant cannot take advantage of the WDCA bar. Defendant's Motion for Judgment on the Pleadings with respect to this issue is DENIED.

## III PUNITIVE DAMAGES UNDER THE ELLIOTT–LARSEN ACT

In deciding whether Plaintiff is prohibited, as a matter of law, from recovering punitive damages, it is important to clarify what the word "punitive" means in the present context. Plaintiff is not using this word as a synonym for "punishment." Instead, Plaintiff uses the word "punitive" to refer to the damages that occurred in the form of the degradation, humiliation and embarrassment that flowed from the alleged sex discrimination. These damages are obviously quite personal to Plaintiff; they have nothing at all to do with punishing Defendant.

Since this is a statutory claim, this Court will, perforce, be guided by the letter and spirit of the Elliott-Larsen Act. The appropriate provision in section 801, the Act's remedial provision. *See* M.C.L.A. § 37.2801. As was mentioned earlier, section 801 authorizes both legal and equitable relief. It provides that: "A person alleging a violation of this act may bring a civil action for appropriate injunctive relief or damages, or both."

█ Thus, a Plaintiff may recover both legal and equitable damages under the Elliott-Larsen Act. If, therefore, humiliation and degradation really flowed from the alleged discrimination in this case, Plaintiff can recover damages to compensate for her hurt feelings. Here too, this Court draws support from Judge Feikens' *Freeman* opinion. This Court would, however, like to respectfully note that it does not necessarily endorse Judge Feikens' brief remarks about a tort for racial discrimination. *See Freeman v. Kelvinator*, 469 F.Supp. 999, 1004. This Court only finds it necessary to hold that the Elliott-Larsen Act creates a statutory right of action that includes legal damages. Such damages in turn include damages based on humiliation and embarrassment.

Finally, this Court feels duty bound to point out that there is nothing in the common law of Michigan that precludes the result reached here. Defendant cites two cases in favor of the proposition that "punitive" damages are not recoverable in Michigan. The first case cited, *Smith v. Jones*, 382 Mich. 176, 169 N.W.2d 308 (1969), does nothing more than enunciate the rule that damages to punish are not recoverable. As was mentioned above, this Court wholeheartedly agrees with this proposition. Next, Defendant cites *Ray v. City of Detroit*, 67 Mich.App. 702, 242 N.W.2d 494 (1976). But *Ray* also is simply a statement that punishment damages are not recoverable. *See, Ray, supra* at 704, 242 N.W.2d

494. It need hardly be mentioned that this rule is not a barrier to the instant Plaintiff. Moreover, there is language at the end of the *Ray* opinion that actually supports plaintiff's position. The court points out that there is no reason why the Defendant "should be excused from compensating . . . for the injury to [Plaintiff's] feelings and for the sense of indignity and outrage when these are part of the totality of the injury she has actually suffered." *Ray, supra* at 707–08, 242 N.W.2d 494. This Court agrees.

Therefore, Defendant's Motion to strike Plaintiff's claim for punitive damages under the Elliott-Larsen Act is dismissed.

## IV COMPENSATORY AND PUNITIVE DAMAGES UNDER TITLE VII

### (a) Compensatory Damages

In her Title VII claim, Plaintiff seeks to recover compensatory damages as well as back pay. Plaintiff alleges that her demotion led to physical and emotional illnesses that have entailed and will continue to entail substantial medical expenses. It is Plaintiff's position that such losses are recoverable under Title VII. *See* 42 U.S.C.A. § 2000e *et seq.*

In order to resolve this question, it is necessary to examine section 706(g)—the Title VII remedial provision. Section 706(g), one of the most important provisions in Title VII, provides in pertinent part:

"If the Court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay . . . or any other equi-

table relief as the court deems appropriate." *See* 42 U.S.C.A. § 2000e–5(g).

Unfortunately for the Plaintiff in the instant case, section 706(g) has almost uniformly been interpreted as not permitting compensatory damages.[7] The authority cited by the Plaintiff[8] in support of her compensatory damages theory is outdated and for all practical purposes is overruled. The Sixth Circuit expressly considered the Title VII compensatory damages in *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (1978), and a unanimous panel ruled that such damages were not authorized under Title VII.

While agreeing that compensatory damages cannot be awarded under Title VII, the Court would, however, like to carefully explain the proper rationale that supports this ruling. It is incorrect to argue that section 706(g) remedies are limited to restitution-like remedies that tend to make the Plaintiff whole in the nature of back pay. *See* p. 6 of Defendant's brief. This theory is inconsistent with the interpretation of section 706(g) that has been enunciated by the Supreme Court.

The classic section 706(g) analysis was set out by the Court in *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In *Albemarle*, the Court emphasized that section 706(g) is an equitable provision, a provision that is designed to grant the federal courts wide discretion in fashioning Title VII remedies. *See Albemarle, supra* at 414, 95 S.Ct. at 2370. The court did point out that the district courts were to be guided by the twin purposes of Title VII: the prophylactic purpose of compelling employers to end job discrimination and the make-whole purpose of putting the victims of discrimination in the place they would have been but for the discrimination. *See Albemarle, supra* at 418, 95 S.Ct. at 2372. Nevertheless,

---

**7.** *See e. g., Pearson v. Western Electric Co.*, 542 F.2d 1150 (CA 10, 1976); *Harrington v. Vandalia-Butler Board of Education*, 585 F.2d 192 (CA 6, 1978); *Bundy v. Jackson*, 641 F.2d 934, 1155 (D.C.Cir.1981). *See also Torres v. Clayton*, 25 Fair Empl. Prac. Cas. 998 (S.D.Calif., 1981); *Patterson v. Youngstown Sheet & Tube Co.*,

475 F.Supp. 344 (N.D.Ind., 1979); *Bradley v. G&WH Corson*, 501 F.Supp. 75 (E.D.Pa., 1980); *Freeman v. Kelvinator*, 469 F.Supp. 999 (1979).

**8.** *Tidwell v. American Oil Co.*, 332 F.Supp. 424 (Utah 1971).

the unmistakable lesson of *Albemarle* was that flexible equitable remedial powers rest in the district courts.

This message was repeated the following year in the case of *Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976). In *Franks*, the Court reversed the Fifth Circuit, and upheld a district court award of retroactive seniority extended to a class of black employees that had been subjected to employment discrimination. As Justice Brennan pointed out:

> "The fashioning of appropriate remedies involves the sound equitable discretion of the federal courts." *Franks, supra,* at 770, 96 S.Ct. at 1267.

*Franks* clearly indicates that section 706(g) authorizes Title VII relief extending far beyond back pay-oriented measures. Even more striking is the wholesale judicial acceptance of quotas and timetables as appropriate Title VII remedies.[9] This type of

remedy typically involves quotas that provide for the hiring or promotion of minority group members or women who have not been the victims of discrimination by the employer upon whom the quota is imposed. This remedy has been utilized by many district courts,[10] and the various Courts of Appeals have unanimously approved.[11] Moreover, in dicta in the *Bakke*[12] and *Fullilove*[13] cases, the Court remarked that quotas were a permissible remedy under Title VII. It must be emphasized that the quota remedy cannot be justified as an expression of the back pay-oriented remedy. Indeed, the only conceptual justification for this remedy is that it is within the district court's section 706(g) discretion as an equitable remedy.

The equitable remedy structure of section 706(g) is the reason why compensatory damages are impermissible under Title VII. Compensatory damages, unlike back pay, are not a form of equitable restitution.

9. It should certainly be noted that the reference is to affirmative action *remedies* that have been imposed in response to proven acts of discrimination. This is quite different from the voluntary affirmative action plans of the type approved by the Supreme Court in *United Steelworkers v. Weber*, 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979).

10. See e. g., *EEOC Eazor Esson Express Co.*, 24 Fair Empl. Prac. Cas. 503 (W.D.Pa.1980); *Eubanks v. Pickens-Bond Construction Co.*, 24 Fair Empl. Prac. Cas. 892 (E.D.Ark., 1979); *Patterson v. Youngstown Sheet & Tube Co.*, 475 F.Supp. 344 (N.D.Ind., 1979); *U. S. v. Commonwealth of Virginia*, 454 F.2d 1077 (E.D. Va.).

11. See *Boston Chapter NAACP v. Beecher*, 504 F.2d 1017 (CA 1, 1974); *Association Against Discrimination v. City*, 647 F.2d 256 (CA 2, 1981); *Pennsylvania Commonwealth v. O'Neill*, 473 F.2d 1029 (CA 3, 1973); *Phillips v. Joint Legislative Committee*, 637 F.2d 1014 (CA 5, 1981); *Crockett v. Green*, 534 F.2d 715 (CA 7, 1976); *Firefighters Institute v. City of St. Louis*, 21 Fair Empl. Prac. Cas. 1140 (CA 8, 1980); *Western Addition Community Organization v. Alioto*, 514 F.2d 542 (CA 9, 1975). The Sixth Circuit first approved a remedial quota plan in *United States v. International Brotherhood of Electrical Workers*, 428 F.2d 144 (CA 6, 1970). This approval has been affirmed on a number of occasions. See e. g., *United States v. Masonry Contractor's Asso.*, 497 F.2d 871, 877 (CA 6, 1974); *EEOC v. Detroit Edison*, 515

F.2d 301, 317 (CA 6, 1975); *Arnold v. Ballard*, 12 Fair Empl. Prac. Cas. 1613 (CA 6, 1976). For an interesting recent Sixth Circuit discussion of racial quotas, *see Detroit Police Officers v. Young*, 6 Cir., 608 F.2d 671 (1979).

This footnote is not intended to express either an approval or disapproval of affirmative action or affirmative action remedies. The only point being made here is that such remedies are lawful Title VII remedies—beyond a doubt.

12. *Regents of the University of California v. Bakke*, 438 U.S. 265, 301, 98 S.Ct. 2733, 2753, 57 L.Ed.2d 750 (1978).

13. *Fullilove v. Klutznick*, 448 U.S. 448, 509, 100 S.Ct. 2758, 2791, 65 L.Ed.2d 902 (1980) (Powell J. concurring). *Bakke* and *Fullilove* were affirmative action cases involving Title VII of the 1964 Civil Rights Act and the equal protection clause of the Constitution. The dicta cited, however, clearly indicated that the majority of the Court would uphold remedial affirmative action. For an excellent discussion of remedial affirmative action, *see Sedler, Racial Preference, Reality and the Constitution; Bakke v. Regents of the University of California*, 17 Santa Clara L.Rev. 329 (1977). An interesting presentation of the opposing position can be found in *Van Alstyne*, Rites of Passage, Race, The Supreme Court, and the Constitution, 46 University of Chicago Law Review 775 (1979).

Compensatory damages are legal damages. Therefore, compensatory damages are beyond the scope of section 706(g). In the instant case, the Plaintiff as a matter of law, cannot recover compensatory damages. Defendant's Motion for a Rule 12(c) judgment on the pleadings must be granted with respect to the compensatory damages issue.

### (b) Punitive Damages under Title VII

■ A similar analysis demonstrates why punitive damages are not recoverable under Title VII. Punitive damages obviously are a legal rather than equitable remedy. Therefore, as the Sixth Circuit pointed out in *EEOC v. Detroit Edison*, 515 F.2d 301 (1975), punitive damages are not authorized under section 706(g). Hence, Defendant's Motion for judgment on the pleadings is granted with respect to the Title VII punitive damages issue.

### V TITLE VII RIGHT TO JURY TRIAL ISSUE

Plaintiff contends that the Seventh Amendment to the Constitution guarantees a right to a jury trial with respect to her Title VII claim. Plaintiff is seeking, among other things, back pay. Plaintiff argues that back pay is a legal remedy and this leads Plaintiff to believe that she is entitled to a jury trial.

In analyzing this issue also, Supreme Court dicta is extremely helpful. Moreover, the equitable nature of section 706(g) is once more the decisive factor. In the case of *Curtis v. Loether*, 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), the Court—in a famous discussion—compared the legal structure of Title VIII of the Civil Rights Act with the equitable structure of Title VII. The Court pointed out that the remedial section of Title VIII, section 812, expressly authorizes punitive and compensatory damages. The Court contrasted this with the equitable structure of section 706(g) of Title VII. The legal relief contemplated by section 812 led the Court to hold that Title VIII provides for an action at law, and is thus within the Seventh Amendment's right to a jury trial. *See Curtis, supra* at 196–98, 94 S.Ct. at 1009–10.

The Court did not expressly rule on the right to a jury trial under Title VII, but the dicta discussed above was a telltale sign that the Court viewed Title VII as an equitable right of action statute. Given that this premise is accepted, it follows that there is no right to a jury trial under Title VII; and this is the conclusion that the Courts have unanimously reached.[14]

■ Plaintiff has misconceived the role of back pay under Title VII. Back pay is nothing more than one of several equitable forms of relief that may be awarded under Title VII.[15] Back pay should be understood as equitable restitution—rather than legal damages. Congress created a private equitable right of action with the enactment of Title VII. It was left to the discretion of the trial courts to determine whether or not back pay is an appropriate remedy under the circumstances. Since Title VII—with or without a back pay remedy in a particular case—creates an equitable right of action, there is no Constitutional right to a jury trial. The Seventh Amendment jury trial right, by its own terms, applies only to actions at law. Therefore, Title VII is not

---

**14.** *See e. g., Marotta v. Usery*, 629 F.2d 615 (CA 9, 1980); *Johnson v. Georgia Highway Express Inc.*, 417 F.2d 1122 (CA 5, 1969); *EEOC v. Detroit Edison*, 515 F.2d 301 (CA 6, 1975).

**15.** Because back pay is an equitable remedy, it is not automatically awarded under Title VII. This was vividly demonstrated in *Los Angeles Department of Water & Power v. Manhant*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978).

*Manhant* involved a sex discrimination complaint brought by a class of female employees who argued that differential gender based pension plan rates violated Title VII. The Court upheld a finding that such pension plans were in violation of Title VII. The Court decided, however, that under the circumstances class wide back pay was not an appropriate remedy. *See id.* at 720–23, 98 S.Ct. at 1381–83.

encompassed by the Seventh Amendment. This Court, in light of the above reasoning, hereby grants the Defendant's Motion to strike the Plaintiff's demand for a jury trial in the Title VII action.[16]

## VI PLAINTIFF'S EQUAL PAY ACT CLAIM

Plaintiff seeks to establish that, in addition to violating the Elliott-Larsen Act and Title VII, Defendant has also violated 29 U.S.C.A. § 206(d), commonly known as the Equal Pay Act. Plaintiff's amended complaint alleges that she continued to perform the duties of an assistant manager even while she was working as a bookkeeper. Although the amended complaint does not explicitly make the comparison, the clear inference is that male assistant managers were being paid more than Plaintiff, despite the fact that Plaintiff was performing the same or close to the same duties as the male assistant managers.

The Equal Pay Act prohibits discrimination "between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility . . ." The Act has been interpreted to outlaw different wage rates where men and women are performing substantially the same duties.[17] It is no defense to the Equal Pay Act that the employer labels two jobs differently, if the two positions involve substantially the same duties. The job's content, rather than the job title, is the decisive factor.[18]

In the instant case, the Plaintiff has alleged that she was paid less than males despite the fact that she was essentially doing the same work. This is one of the aspects of the sex discrimination upon which Plaintiff has based her claim. On a Motion for judgment on the pleadings, the pleadings must be viewed in the light most favorable to the non-moving party. See Wright and Miller, Federal Practice and Procedure, § 1368. Under this approach, the Defendant's Motion must be denied. If the Plaintiff has been underpaid as she alleges, it would appear that her Equal Pay Act claim will succeed. In light of this, judgment on the pleadings is obviously not appropriate.

This Court is well aware that the Plaintiff's amended complaint was not precisely

---

16. The instant case presents the question of whether a jury trial is a matter of right under Title VII. This Court stresses that it is not reaching the much more controversial question of whether a jury trial is a matter of right where the Plaintiff claims a violation of 42 U.S.C. § 1981 in addition to a Title VII violation. See Jones v. Metropolitan Hospital, 88 F.R.D. 341 (E.D.Mich.) (Opinion by Judge Gilmore that a jury trial is a matter of right in a combined Title VII—section 1981 action). But see Novotny v. Great American Savings & Loan Association, 3 Cir., 584 F.2d 1235 (no right to a jury trial in combined Title VII—section 1983 action).

Likewise, this Court's discussion and holding in part IV(b) of this opinion should not necessarily be taken as a decision that compensatory and punitive damages are inappropriate in combined Title VII, section 1981 action. For recent district court decisions dealing with this issue, see Tucker v. Harley Davidson Motor Co., 24 Fair Empl. Prac. Cas. 1404 (E.D.Wis., 1978) (allowing compensatory and punitive damages); Williams v. Valley-Minten City Oil Mix, 21 Fair Empl. Prac. Cas. 383 (N.D.Miss.,

1978) (allowing compensatory and punitive damages); Chai v. Mich Tech University, 493 F.Supp. 1137 (W.D.Mich., 1980) (disallowing compensatory and punitive damages); Reaves v. Westinghouse Electric Corp., 430 F.Supp. 623 (1977) (disallowing compensatory and punitive damages). See also the opinion of Judge Feikens holding that compensatory and punitive damages cannot be awarded in an action brought under Title VII and 42 U.S.C.A. § 1988. Freeman v. Kelvinator, 469 F.Supp. 999 (E.D. Mich., 1979).

17. See e. g., Board of Regents v. Dawes, 522 F.2d 380 (CA 8, 1975); Shultz v. Wheaton Glass Co., 421 F.2d 259 (CA 3, 1970); Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (CA 5, 1974).

18. Hodgson v. Brookhaven General Hospital, 436 F.2d 719 (CA 5, 1974); Wirtz v. Basic Inc. 256 F.Supp. 786 (D.C.Nev., 1966); Calage v. University of Tennessee, 400 F.Supp. 32 (D.C. Tenn., 1975).

structured in terms of the Equal Pay Act. Nevertheless, there was no real doubt about the essence of the claim. It is, therefore, entirely appropriate to recognize the claim, rather than punish the party for a less than artful pleading. This result comports with the liberal orientation of the federal court pleading requirements. *See Conley v. Gibson*, 335 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). For as Professor Wright has pointed out, "the Court will not require technical exactness or make refined inferences against the pleader but will construe the pleading in his favor if justice so requires." Wright, Federal Courts, p. 322. In the instant case, this Court hereby denies Defendant's Motion for judgment on the pleadings with respect to Plaintiff's Equal Pay Act claim.

## VII SUMMARY

This Court has considered the employment discrimination law issues presented by this case and has: denied Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's claim for compensatory and punitive damages under the Elliott-Larsen Act; granted Defendant's Motion to strike Plaintiff's demand for compensatory and punitive damages under Title VII. Furthermore, the Court has granted Defendant's Motion to strike Plaintiff's demand for a jury trial under Title VII. Finally, the Court has denied Defendant's Motion for Judgment on the Pleadings with respect to Plaintiff's Equal Pay Act claim.

IT IS SO ORDERED.