Thurston *v.* Prentiss *et al.*

---

## THURSTON *v.* PRENTISS ET AL.

A. and B. became surety for the payment of two judgments against C., by the 16th July thereafter, and C. executed and delivered to them his promissory note and mortgage for $600, payable the 1st of August following, upon the understanding and agreement, that if C. paid the judgments and saved them harmless from all costs, trouble and expense on account of their having become surety for him, the note and mortgage were to be canceled. C. failed to pay the judgments. *Held,*

1st, That A. and B., after the note and mortgage fell due, might foreclose the mortgage at law, by advertisement and sale under the statute, to raise the money to pay the judgments, and rid themselves of their responsibility.

2d, That A., who purchased the premises on the mortgage sale, held them subject to the right of C. to redeem, on paying the amount A. had paid as surety for the mortgagor, with the costs of foreclosure and interest, and that a third person who purchased the premises of A., with a knowledge of the facts, took the land subject to the mortgagor's equity of redemption.

Thurston *v.* Prentiss *et al.*

A surety who pays usurious interest to obtain time to pay the debt of his principal in, cannot collect the excessive interest so paid by him of his principal.

Where judgment is confessed by principal and surety on a note given for money loaned, including usury, and execution is taken out and levied on the goods of the surety who pays the judgment, the principal is liable over to the surety for the usury paid by him, as well as the sum actually loaned with interest.

A decree may be made between co-defendants, grounded upon the pleadings and proofs between complainant and defendants.

Where a statute gives a new right and prescribes a particular remedy, such remedy must be strictly pursued, and the party is confined to that remedy only; as to recover three-fold the amount of usurious interest paid, under R. S. 1838, p. 161, see. 7.

APPEAL from the Court of Chancery.    Case reported in Walk. Ch. R. 529.

· *Backus*, for appellant.

*Terry*, for appellees.

*By the court*, WING, J.    On the 15th of March, 1839, appellant applied to Azariah Prentiss, one of the defendants, for the loan of $300, and it was agreed between them that appellant should receive of Prentiss this sum, upon the terms that appellant should allow to Prentiss the sum of $100 for the use of the $300, or at the rate of sixty per cent, until the 16th day of July, when the sum loaned and interest was to be repaid; and appellant was to procure some one to sign with him two notes, each for $200, upon which they should confess judgments the same day, and that such judgments were to be stayed.    Accordingly, appellant procured David Phelps to execute two notes with him to Prentiss, for $200 each, upon which they confessed judgments before a justice, and John Price became security for stay of execution in both judgments, until the 16th of the then next July.    And then Prentiss delivered to appellant the $300; and appellant, at the request of Phelps and Price, executed and delivered to them his promissory note for $600, made payable on the 1st day of August then next, secured by mortgage, which note and mortgage were executed to Phelps and Price upon the understanding and agreement between them and appellant, that if he should pay the amount of the judgments and save them harmless from all costs, trouble and expense, on account of their having

become surety for him on the judgments, then the note was to be given up and the mortgage canceled. After the expiration of the stay of execution, executions were sued out upon both of the judgments, and levied upon the personal property of Phelps, and he endeavoured to induce appellant to pay the executions, but without success. Phelps therefore, to save his property from sale on the executions, executed to Prentiss a mortgage on his own farm, for the amount of said judgments and ten per cent interest, payable 1st July, 1841. The executions were withdrawn. After the note to Phelps and Price fell due, they foreclosed their mortgage under the statute; and on the 4th day of November, 1839, Phelps bid in the mortgaged premises for the sum of $438, and afterwards, on the 27th day of August, 1841, he assigned his certificate of purchase, and Price united with him in assigning the note and mortgage to Crissman for the sum of $500, of which sum they paid Prentiss, on the 27th August, 1841, the amount supposed to be due to him; since which period Crissman has held the note, mortgage and certificate.

The defendants are charged in the bill with having combined to get appellant's farm for their common benefit, and that all of the defendants except Dolby were originally concerned together in the scheme of loaning the money, taking the note of $600 and the mortgage to secure it, and in its foreclosure, and that all were advised of the usury in the loan before they received or purchased the note and mortgage.

There is no proof of combination between the defendants. The defendants deny any knowledge of the usury except Prentiss; he says he is unable to say how it was, as two years had elapsed since he loaned the money. But it is abundantly proved that Prentiss loaned the money to appellant at the rate of sixty per cent per annum: that Phelps and Price were present at the time the money was counted, and Phelps handed it over to appellant, and that he only received $300. Crissman was fully advised of the usury long before he took an assignment of the note, mortgage and certificate. The illegal interest reserved in the notes and judgments did not avoid them; the statute authorized the collection of the amount loaned, and legal interest, deducting the usury.

At the time the mortgage was foreclosed, neither Phelps nor Price had been damnified by reason of their having become sureties for the

appellant, neither did they pay any sum upon the judgments until August, 1841. The question arises, whether they were authorized, by the terms upon which they received the note and mortgage, to proceed to enforce the collection of the note by foreclosure of the mortgage, at the time they did so. After a careful examination of the bill, answer and proofs, I am satisfied Phelps and Price were authorized, and it was legally competent for them to foreclose the mortgage immediately after it fell due. The judgments had become due, and appellant had failed to pay them. The stay of execution was not entered pursuant to the statute, and therefore it did not operate to stay the executions; but it appears Prentiss did not take out executions until after the period it was agreed the judgments should be stayed. There is no condition expressed in the note, upon which it is to become due. It is like any other negotiable note. Then, assuming the understanding between appellant and Phelps and Price, in reference to the note and mortgage, *to* have been as stated, I am satisfied they were intended for something more than simple indemnity. Phelps and Price were bound to pay the judgments when they fell due, and when appellant failed to pay, they had the right to foreclose the mortgage to raise the means to pay the judgments, and rid themselves of the responsibility they had incurred. The amount they had to pay was certain. It is otherwise where the agreement is to save another from *damage* by reason of any matter, for that would be a security to indemnify. See this doctrine discussed and explicitly stated and explained in 1 Saund. 116, n. 1: Holmes *v.* Rhodes, 1 Bos. & Pul. 638; Hodgson *v.* Bell, 7 T. R. 97; 17 John, R. 239, 479; 7 Wendell 499; Penny *v.* Foy, 8 Barn. & Cress. 11; Theobald's Prin. & Surety, 231; Thomas *v.* Allen, 1 Hill 145; 19 Wendell 423; 8 Cowen 631, 639; 3 Denio 323, 327.

I do not find anything in the pleadings and proofs which should subject appellant to the payment of any sum on account of the extra interest agreed to be paid by Phelps to Prentiss, and secured in his mortgage. I lay that transaction entirely out of the case, as I think Phelps was not authorized to contract for further delay upon the terms of paying usurious interest.

. Phelps and Price paid the amount due to Prentiss. Appellant did not interfere to protect them from paying either the amount actually loaned, or the usurious portion of it, and they were not bound to liti-

gate the matter with Prentiss, to get rid of the usury. Appellant might have done so, and he was the only person interested in reducing the amount to be paid; but he neglected to interfere for the protection of his sureties, and Phelps was liable to have the judgments enforced against him. By his paying the whole, including the usury, the appellant became bound to refund, or allow the same amount on settlement with him.

Then, if the foreclosure was binding upon the mortgagor, what right did the mortgagee acquire by his purchase at the sale of the mortgaged premises? Had a third person become the purchaser, who was unacquainted with the usurious character of the original transaction, no doubt he would have acquired a perfect title as against the mortgagor, to the mortgaged premises after the period allowed by law for the redemption had expired; and if the premises were redeemed, he would have been entitled by law to exact and receive ten per cent interest on the amount paid by him at the purchase. But did the mortgagee occupy the same position, with the same rights? It is true, that under the statute it was competent for him to purchase, but he could not, by his purchase, divest the land of the equities which existed between him and the mortgagor. If the mortgagor had gone forward and paid Prentiss the whole amount due him, and thus released Phelps from all liability to Prentiss, immediately after the foreclosure, he could have enforced from Phelps a relinquishment of all interest in the mortgaged premises, upon paying to him the expenses of the sale. If a third person had purchased and paid the amount of the bid to Phelps, Phelps could only have retained so much as would be sufficient to pay Prentiss and the expenses of the sale: any balance that he might have received would have belonged to the appellant. Then, as Phelps held the certificate of sale (no matter how much he had bid), subject to a redemption by the mortgagor, by his paying to him the amount for which he was liable to Prentiss, or which he might have paid to Prentiss, together with the expenses of sale, did he divest these equities by an assignment of his interest to Crissman, who was fully advised of the facts? I think not, for the assignee with notice could only acquire the rights of the assignor, consequently appellant is entitled to redeem by paying to Crissman the amount of the two judgments, with legal interest, together with the expenses of foreclosure.

Appellant insists that it is competent for this court to decree that Prentiss shall pay back to Phelps, or appellant, the amount of the excess of interest paid to him by Phelps. He insists that it is competent for this court to decree repayment either to the one or the other.

It is no doubt true that a court of equity may make a decree as between co-defendants, grounded upon the pleadings and proofs between complainants and defendants. It is the constant practice of courts of equity to do so, to prevent multiplicity of suits. See 2 Sch. & Lef. 710, 718; 2 Ball & Beatty 255; Jones *v.* Grant, 10 Paige 350. The chancellor might have decreed that Phelps should refund to Crissman the difference between the amount he may receive from appellant and the amount he paid to Phelps. But as the defendants did not appeal, and appear to have been satisfied with the decree of the chancellor, and their counsel does not now ask it, we do not feel authorized so to decree. Neither could we decree a repayment of the excess of interest, received by Prentiss, to Phelps, for the same reason. And we cannot decree that Prentiss shall repay to appellant the excess received by him above the $300 loaned and legal interest, even assuming that the payment made by Phelps was for appellant, and that it may be considered as his act. If the bill of complaint had been filed and injunction granted before Phelps had paid Prentiss, there would have been no difficulty in decreeing a satisfaction of the judgments on the payment to Prentiss of the $300 and legal interest; but the bill was filed after Phelps had paid to Prentiss the amount of the judgments, with ten per cent interest thereon. It was upon the ground that the chancellor refused to decree that Prentiss should repay the excess of interest, that the appeal was taken from the decree of the chancellor to this court.

In England it has been held, that though their statute does not go so far as to make the party receiving the usurious interest liable to refund, yet as it prohibited the taking beyond such a sum and avoided the contract, the taking was a breach of the statute; and the actual receipt of the money will (in a court of equity) make him liable to refund: the wrong being the same whether the usurious interest hath been actually paid or not. 10 Bac. Abr. 293, G. new edit. In 1 Story's Eq. Juris. sec. 302, it is stated, that if the borrower has actually paid the money upon an usurious contract, courts of equity, and, indeed, courts of law also, will assist him to recover back the excess. This doctrine is based upon the English decisions.

Thurston *v.* Prentiss *et al.*

It is true, as a general proposition, that where parties are concerned in illegal agreements or other transactions, whether they are *mala prohibita* or *mala in se*, courts of equity, following the rules of law as to participators in a common crime, will not at present interpose to grant any relief—acting upon the known maxim, *in pari delicto potior est conditio defendentis, et possidentis*. In cases of usury, the rule is somewhat different. As we have seen, in England their statute of usury declares all such contracts, and all the securities taken under them, void.; and their courts of equity follow the law courts in the construction of the statute. If the lender comes into a court of equity seeking to enforce the contract, the court will not aid him; but if the borrower seeks relief in that court, it will relieve him against the usurious portion of the contract only upon the terms of his paying the actual amount loaned and interest; and it is upon this principle, that if the borrower has paid the money upon an usurious contract, courts of equity will assist him to recover back the excess paid above lawful interest. The borrower is not held to be a *particeps criminis*, and it is no just objection to say that *volenti non fit injuria*, for if *in delicto* he is not in *pari delicto*. His is the case of a man who from mere necessity pays more than the other can in justice demand, and who has been significantly called the slave of the lender; and as to being *particeps criminis*, he stands *in vinculis*, and is compelled to submit to the terms which oppression and his necessities impose upon him. 1 Story's Eq. Juris. 302. But, as we have said, the decisions at law and in equity in England are founded upon their statutes. With us the subject of interest on loans is governed by a special statute, and excludes the application of common law principles, either to rights or remedies growing out of contracts made under it.

The third section of R. S. 1838, p. 160 (under which the loan in this case was made), declared that the rate of interest should continue to be at the rate of seven dollars, and no more, upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time. The fourth section, unlike the English statute, enacts, that "none of the securities whereby or whereon a greater rate of interest has been directly or indirectly reserved, taken or received than is allowed by law, shall be thereby rendered void; but the same may be enforced as provided in this chapter." What are those remedies? They are found in the fifth and seventh sections of this chapter, and they are two-fold:

Thurston *v.* Prentiss *et al.*

1. In any action brought on any contract or security in which usury is reserved, if the fact is made to appear, the defendant shall recover his full costs, and the plaintiff shall forfeit three-fold the amount of the usurious interest so reserved, taken or received, and shall have judgment for the balance only which shall remain due after deducting from the principal and lawful interest the said three-fold amount.

2. The party paying the usurious interest may recover back three-fold the amount of the excess of interest paid in an action of debt: provided, such action shall be prosecuted within one year from the time when such interest shall have been paid.

These are the only remedies prescribed by the statute, and resort cannot be had to any other.

Our statute is nearly a literal copy of the statute of Massachusetts: with this difference, however, that the Massachusetts statute authorizes the recovery of three-fold the whole interest paid by an action of debt, *or by a bill in chancery.* Our statute only authorizes an action of debt.

It is a well estalished principle of law, that where a statute gives a new right and prescribes a particular remedy, such remedy must be strictly pursued; and a party seeking the remedy is confined to that remedy, and that only. 1 Com. Digt. 44-7-8; 9 Bac. Abr. 259, 260; 2 Burr. 803; 1 Blackf. R. 405; 2 Saund. Pl. and Ev. 829; 5 John. R. 175; 3 Mass. 307; *5 id.* 514.

In the case of Wiley *v.* Yale, 1 Metcalf 553, it was held by the supreme court of Massachusetts, that a party who paid a greater rate of interest than was allowed by law, could not recover back three-fold the amount of interest paid, by an action of trespass on the case, but only by an action of debt or a bill in chancery, as provided by their revised statutes.

In a subsequent case in Massachusetts, Crosby *v.* Bennett, 7 Metcalf 17, the point raised in this case was directly decided by the supreme court of that state. An action for money had and received, was brought to recover the amount of interest paid above six per cent. It was urged by the counsel for the plaintiff, that the action lay after their revised statutes had given the action of debt or bill in chancery—that those remedies were only cumulative. In support of this position, he cited 2 Com. on Con. (1 ed.) 113, and cases there cited; Wheaton *v.* Hibbard,

20 John. R. 290. Ch. J. Shaw, in delivering the opinion of the court, says: " The authorities cited certainly tend to show that so long as an usurious contract was declared illegal and void, it followed, as a necessary consequence, that money paid thereon was taken illegally, and was oppressively extorted from the borrower, and, therefore, that this equitable action would lie to recover it back: but now the revised statutes expressly declare that no such contract shall be void, and in order to restrain the taking of usurious interest, the statute goes on to make specific provisions. The consideration that now by law the contract is not void, distinguishes this case from those cited, and takes away the ground upon which they rested. The ground upon which it was formerly held that an action for money had and received would lie, was, that it was illegal and oppressive to take more than six per cent. interest, and, therefore, it could not conscientiously be retained from the person who paid it. But under our statute, the contract is not illegal, and the party who has suffered by paying usurious interest is confined to the statute remedies. The right to recover back three times the amount of the usurious interest is given by the statute to the party who has paid, and is partly in the nature of an equitable action to recover back money which the defendant cannot conscientiously and justly retain, and partly in the nature of a penalty. So far as the statute affords a remedy to recover back money wrongfully taken—it is a substitute for the remedy at common law. If, therefore, the party might waive the statute and sue at common law, he would avoid the provision limiting such action to two years from the payment, contrary to the manifest intent of the legislature and the policy of the law." The reasoning in this decision, it appears to me, is conclusive, and shows that the appellant cannot have, nor can either of the defendants have, any redress against Prentiss in this suit. See, also, 1 Metcalf 553, 398; 6 *id.* 296.

The statute gives the only remedy, and the parties are confined to it; the contract was made in referene to it; and even if the remedy by statute was repealed, yet the parties would not be entitled to a remedy in a court of equity, or by an action for money had and received. 9 Bac. Abr. 226-8; 1 Hill 333-5.