DETROIT FIRE FIGHTERS ASSOCIATION v CITY OF DETROIT

Docket No. 65752. Submitted April 12, 1983, at Detroit.—Decided August 1, 1983.

Marion English is the widow of August English. Mr. English was a fire fighter for the City of Detroit from 1949 until 1970. In 1970, Mr. English became disabled due to heart disease found to be a result of his employment. He applied for and received a disability pension from the city. Mr. English died in 1978. Thereafter, Mrs. English applied for death benefits from the city's policemen and firemen retirement system. She was found eligible for benefits by the Board of Trustees of the retirement system. However, a dispute developed concerning which year was to be used in determining the benefits; the year Mr. English became disabled, as defendants herein claim, or the year of death, as plaintiffs herein contend. Thereafter, plaintiffs, Detroit Fire Fighters Association and Marion English, brought an action against defendants, City of Detroit, Board of Trustees of the City of Detroit Policemen and Firemen Retirement System and the board's executive secretary, in the Wayne Circuit Court seeking declaratory and injunctive relief. The Detroit Police Officers Association and Detroit Police Lieutenants and Sergeants Association were intervening plaintiffs. All parties moved for summary judgment. The trial court, Thomas Roumell, J., granted plaintiffs' and intervening plaintiffs' motions for summary judgment and denied defendants' motions. The court ruled that the clear meaning of the language of the city's charter was that Mrs. English was entitled to have her benefits computed on the basis of the fiscal year of the member's death and that her husband continued to be a "member" of the retirement system until his death, even after he had

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 195.

[2] 2 Am Jur 2d, Administrative Law § 556 et seq.

[3] 48A Am Jur 2d, Labor and Labor Relations § 1770.

60 Am Jur 2d, Pensions and Retirement Funds §§ 43, 44.

become disabled. Defendants appeal from the order pertaining thereto. *Held:*

1. The trial court properly granted the summary judgment to the plaintiffs.

2. The board of trustees' interpretation of the language of the city charter to mean that Mrs. English is entitled to survivor's benefits to be budgeted according to the date of her husband's death was reasonable and correct.

3. Mr. English ceased to be "member" at the time of his retirement and became a "beneficiary who was a member".

4. Article VI, Part D of the Charter of 1918 of the City of Detroit is ambiguous and must be construed with reason and with the intent of providing survivors' benefits to widows of both members and beneficiaries who were members.

5. The plaintiffs and the lower court were correct in concluding that Article VI, Part D, § 1(b) simply defines the benefits for all widows and surviving children while § 1(g) defines the year used in computing those benefits, that being the year of the deceased spouse's or parent's death regardless of whether he became disabled in an earlier year.

6. The plaintiffs were not collaterally estopped from seeking to interpret the charter other than according to a decision of the circuit court in another case in which the facts were not analogous.

Affirmed.

1. Municipal Corporations — Charters — Judicial Construction.

The language of a charter provision is controlling when it is unambiguous and specific; an ambiguous charter provision must be interpreted in a manner consistent with reason and with the goal of determining the purpose and intent of its framers and the public who enacted the charter.

2. Municipal Corporations — Charters — Judicial Construction — Appeal.

The Court of Appeals should not overturn an interpretation of a city charter provision regarding pensions by the board which is in charge of the administration of the pension system where the board has reasonably interpreted the charter in light of the objects and purposes sought to be accomplished by the pension program.

3. Labor Relations — Municipal Corporations — Retirement Benefits — Vested Contract Rights — Collective Bargaining.

The terms of a retirement plan for police officers and fire fighters

may not be changed by the board which is in charge of the administration of the plan; such changes are mandatory subjects of collective bargaining.

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs* and *George H. Kruszewski),* for Detroit Fire Fighters Association and Marion English.

*Gregory, Van Lopik, Moore & Jeakle* (by *Nancy Jean Van Lopik),* for Detroit Police Officers Association.

*Mark R. Ulicny,* Deputy Corporation Counsel, and *Frank W. Jackson* and *Kenneth G. King* and *Catherine C. McLaughlin,* Assistants Corporation Counsel, for defendants.

Before: T. M. BURNS, P.J., and R. M. MAHER and CYNAR, JJ.

CYNAR, J. Defendants appeal as of right from a June 18, 1982, decision granting plaintiffs' motion for summary judgment.

Plaintiff Marion English is the widow of August English. Mr. English was a fire fighter for the City of Detroit from 1949 until 1970. Mr. English was a "new plan" member of defendant city's retirement system for its fire fighters and police. An "old plan" member is one who began employment before 1969. A "new plan" member began employment in 1969, or after, or began his employment prior to 1969 but elected to come under the new plan. Mr. English fit into the latter category.

In 1970, Mr. English became disabled due to heart disease found to be a result of his employment. He applied for and received a disability pension of 66-2/3% of his final compensation, in accordance with Title IX, Chapter VII, Art VI, Part B, § 2.1(a) of the Charter of 1918 of the City

of Detroit. This pension increased two percent per year pursuant to the provisions of Art VI, Part C, § 2.

Mr. English died in 1978. Mrs. English applied for death benefits under Part D of Art VI of the charter. She was found eligible by the board of trustees of the retirement system for benefits in the amount of five-elevenths of the maximum earnable compensation for the rank of fire fighter under § 1(b) of Art VI, Part D. At this point, however, a dispute arose as to how to compute this "earnable compensation". Specifically, the dispute concerned what year was to be used in determining the earnable compensation, *i.e.,* the year Mr. English became disabled or the year he died. Plaintiffs contend that the year of death should be used. They base this argument upon § 1(g) of Art VI, Part D. Defendants contend that § 1(g) is inapplicable to Mr. English because it applies only to the year of death of a "member" of the firemen's retirement system and that, because Mr. English ceased to be a "member" of the system at the time when he became disabled in 1970, the date of his disablement should be used for the determination of earnable compensation. Defendants contend that Mr. English became a "beneficiary" in 1970.

All parties moved for summary judgment, agreeing that there was no material factual dispute and that the issue was a legal one which could be disposed of by a summary judgment. The lower court ruled that the clear meaning of the language of the charter was that Mrs. English was entitled to have her benefits computed on the basis of the fiscal year of the member's death and that her husband continued to be a "member" of the retirement system until his death, even after he had become disabled. We conclude that the lower court properly granted summary judgment to plaintiffs.

When the language of a charter provision is unambiguous and specific it is controlling. In such a case, it is presumed that the framers of the charter, and the people of the city involved, intended that the provision be construed as it reads. That intent must prevail. *Kelley v Detroit,* 358 Mich 290, 295-296; 100 NW2d 269 (1960); *Detroit Fire Fighters Ass'n Local No 344, IAFF v Detroit,* 55 Mich App 276, 281; 222 NW2d 210 (1974), *lv den* 393 Mich 755 (1974). If a charter provision is ambiguous it must still be interpreted in a manner consistent with reason and with the goal of determining the purpose and intent of the framers and public. See *White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979); *Aikens v Dep't of Conservation,* 387 Mich 495, 499; 198 NW2d 304 (1972); *Stover v Retirement Bd of St Clair Shores Firemen & Police Pension System,* 78 Mich App 409; 260 NW2d 112 (1977), *lv den* 402 Mich 879 (1978). In all three cases, the Court is referring to the interpretation of statutes, but we believe the same rules would apply to charter provisions.

If the Board of Trustees of the retirement system, which is in charge of the administration of the pension program, has reasonably interpreted the charter in light of the objects and purposes sought to be accomplished, this Court should not overturn that interpretation. *Lansing Fire Fighters Ass'n Local 421 v Board of Trustees of Lansing Policemen's & Firemen's Retirement System,* 90 Mich App 441, 445; 282 NW2d 346 (1979), *lv den* 407 Mich 957 (1980); *Sterling Secret Service, Inc v Dep't of State Police,* 20 Mich App 502, 514; 174 NW2d 298 (1969). The board may not, however, change the terms of the police and fire fighters' retirement plan. Such changes are mandatory subjects of collective bargaining. *Detroit Police Offi-*

*cers Ass'n v Detroit,* 391 Mich 44, 63; 214 NW2d 803 (1974); *Mt Clemens Fire Fighters Union, Local 838, IAFF v Mt Clemens,* 58 Mich App 635, 642-643; 228 NW2d 500 (1975).

In this case, the board of trustees interpreted the language of Art VI, Part D, § 1(g) to mean that Mrs. English is entitled to survivors' benefits to be budgeted according to the date of her husband's death, rather than the date of his retirement. After reviewing the language of various provisions of the charter, we conclude that the decision of the board was reasonable and correct and should not be disturbed by this Court.

The language in question comes from Art VI, Part D, § 1 of the charter.[1] Defendants argue,

---

[1] "Sec. 1. Generally.

"If a *member, or a beneficiary who was a member,* is killed in the performance of his duty or dies as the result of illness contracted or injuries received while in the performance of his duty and such death, illness, or injuries resulting in death, be found by the board of trustees to have resulted from the performance of his duty, the following applicable benefits shall be paid, subject to part I, section 1 of this article:

\* \* \*

"(b) *His widow shall receive a pension of five-elevenths of the maximum earnable compensation for the rank of patrolman or fire-fighter as the case may be, to continue during her widowhood.* If his child or children under age eighteen years also survive the *deceased member* each such child shall receive a pension of one-tenth of such maximum earnable compensation; provided, that if there be more than two such surviving children under age eighteen years each such child's pension shall be an equal share of seven thirty-thirds of such maximum earnable compensation. Upon the death, marriage, adoption, or attainment of age eighteen years of any such child his pension shall terminate and there shall be a redistribution by the board of trustees to the *deceased member's* remaining eligible children, if any; provided, that in no case shall any such child's pension exceed one-tenth of such maximum earnable compensation. In no case shall the total of the pensions, provided for in this subsection, payable on account of the *death of a member* exceed two-thirds of the maximum earnable compensation for the rank of patrolman or fire-fighter, as the case may be.

\* \* \*

"(f) If the maximum earnable compensation for the rank of patrol-

citing several portions of the charter, that § 1(g) does not apply to Mrs. English because it is only applicable to benefits of "members" who die and Mr. English ceased to be a member of the retirement system at the time of his disability retirement. Defendants conclude that only § 1(b) applies to Mrs. English and that, therefore, her benefits should be computed as of the date of her husband's retirement and not the date of his death.

At first glance, defendants' arguments appear valid. Art II, § 4 provides:

"'Member' shall mean any policeman or fireman included in the membership of the system as provided in article IV, section I *(sic)*, (a), (b), (c), or (d) of this amendment, unless more specifically limited herein. (As amended November 5, 1968. In effect January 1, 1969.)"

Art IV, § 3(a) provides:

"Should a member die or become a beneficiary or be separated from service by resignation, dismissal, or disability, he shall thereupon cease to be a member."

Art II, § 11 provides:

"'Beneficiary' shall mean any person in receipt of a pension, an annuity, a retirement allowance, or other benefit provided by the system."

---

man or fire-fighter, as the case may be, is subsequently changed the pensions provided in this section for *beneficiaries of members* as defined in article IV, section 1(a), (b), or (c) shall be proportionately changed.

"(g) The maximum earnable compensation for the rank of patrolman or fire-fighter, as the case may be, to be used in computing the pensions provided in this section for *beneficiaries of members* as defined in article IV, section 1(d) shall be the *maximum earnable compensation of the rank of patrolman or fire-fighter as established by the city's budget for the fiscal year of the member's death.* (As amended September 1, 1964. In effect September 15, 1964. As amended November 5, 1968. In effect January 1, 1969.)" (Emphasis added.)

Viewing these sections by the strict meaning of their language, it would appear that Mr. English ceased to be a "member" at the time of his retirement and that he then became a "beneficiary who was a member". Mrs. English would, therefore, be a "beneficiary of a beneficiary who was a member" after her husband's death.

Although defendants conclude that Art VI, Part D, § 1(g) is made inapplicable to Mrs. English by the above-quoted sections, we disagree.

Article VI, Part D, § 1 refers generally to a "member, or a beneficiary who was a member" who is killed or dies. That language at the beginning of the section, however, is the only reference to a differentiation being made between members and beneficiaries who were members. Throughout the remainder of Part D, the language refers only to "his", "he", "deceased member", "death of a member" or "beneficiaries of members". We conclude that this language is ambiguous and must be construed with reason and with the intent of providing survivors benefits to widows of both members and beneficiaries who were members. Because the framers neglected to refer to "beneficiaries who were members" in any but the opening sentence of Part D, § 1, we agree with plaintiffs that the framers intended that the subsequent subsections of Part D refer to both members and beneficiaries who were members.

The conclusion that the words "member's death" in § 1(g) apply to the death of beneficiaries who were members gives that subsection meaning. An opposite conclusion would render that subsection nugatory. Section 1(b), by its terms, provides that "his" (presumably referring to a member or beneficiary who was a member) widow shall receive a pension equal to five-elevenths of the maximum

earnable compensation for the rank of fire fighter, to continue during her widowhood. It also provides for benefits for surviving children. Logically, because a member ceases to be such when he dies, the benefits for a widow of a member who dies would be determined as of the date of her husband's death. Consequently, there would be no need for § 1(g) if all that subsection provides for is that the same widow's benefits will be computed as of the date of her husband's death. It seems logical that § 1(g) was inserted to provide that the benefits for a widow of a beneficiary who was a member would also be computed using the date of her husband's death. There would be no need for § 1(g) if defendants' interpretation were correct.

Further, there is no subsection equivalent to § 1(g) which is addressed to widows of beneficiaries who were members. It would seem odd to conclude that the framers neglected to insert a provision for these survivors' benefits.

We conclude that plaintiffs and the lower court were correct in concluding that § 1(b) simply defines the benefits for all widows and surviving children while § 1(g) defines the year used in computing those benefits, that being the year of the deceased spouse's or parent's death regardless of whether he became disabled in an earlier year.

We note that both plaintiffs and defendants rely on a 1979 decision by the Wayne County Circuit Court in *Detroit Fire Fighters Ass'n v Detroit* (Docket No. 79-908-202-CI) for support of their positions herein. Leave to appeal in that case was denied by this Court on November 6, 1980. Defendants assert that this decision is the "law of the case" and that plaintiffs were collaterally estopped from seeking to interpret the charter other than according to that decision. Defendants are incor-

rect. A review of the decision convinces us that it is not relevant to the case at hand. The specific issue concerned the proper method of computing a disabled "new plan" member's "average final compensation" for purposes of determining his reduced disability allowance. Although this decision deals with the applicable time period for computing benefits, it deals with different charter sections and language than that involved here. It is not critical to a resolution of this appeal and did not collaterally estop plaintiffs from arguing the issue involved herein at the lower court level.

Affirmed.