MACK v CITY OF DETROIT

Docket No. 214448. Submitted July 18, 2000, at Detroit. Decided October 27, 2000, at 9:10 A.M. Leave to appeal sought.

Linda Mack, a lieutenant with the Detroit police department, brought an action in the Wayne Circuit Court against the city of Detroit, alleging intentional infliction of emotional distress and violation of the provisions of the Detroit city charter that prohibit job discrimination based on gender and sexual orientation. The discrimination claim was based solely on a violation of the provision in the city charter's declaration of rights that provides that no person should be denied the enjoyment of a civil right or discriminated against in the exercise of such right because of sex or sexual orientation. The defendant moved for summary disposition on the basis that the plaintiff had failed to state a cause of action, arguing with respect to the discrimination claim that the city charter did not create a private cause of action. The court, John A. Murphy, J., granted summary disposition for the defendant, holding that the city charter provision did not create a private cause of action. The plaintiff appealed.

The Court of Appeals *held*:

1. Whether the plaintiff has a private cause of action under the defendant's charter is a question of statutory interpretation. The rules governing statutory construction extend to the construction of the charters of home rule cities. Whether a particular statute creates a private cause of action is a question of legislative intent.

2. Generally, when a statute creates a new right or imposes a new duty, the remedy provided by the statute to enforce the right, or for nonperformance of the duty, is exclusive. Where the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has no private cause of action to enforce the right unless the statute creates a private cause of action or a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions.

3. Although the defendant's charter and ordinances provide the plaintiff with a remedy by allowing her to file a complaint with the defendant's Human Rights Department, Michigan has a history of defending individuals from invidious discrimination in the pursuit

of basic civil liberties such as equal opportunity in pursuit of employment. Because a violation of a basic civil right is at issue, and because it is apparent from the charter that there was no intent to make the remedies under the charter and ordinances the exclusive means of redress, the plaintiff is entitled to pursue a civil action for damages against the defendant for any wrongful discrimination in her employment that is in violation of the charter provision that prohibits employment discrimination based on the plaintiff's sex or sexual orientation. The plaintiff's right to bring a private cause of action for any type of employment discrimination prohibited by the defendant's charter is in addition to the plaintiff's right to seek redress through the defendant's Human Rights Department.

Reversed and remanded.

· SAWYER, J., dissenting, stated that the order of summary disposition for the defendant was properly granted and should be affirmed, because it has not been established that a city possesses the authority to create a private cause of action, it is for the Supreme Court to decide whether to extend to rights created by a city charter or ordinance the judicially created civil rights exception to the general rule that the remedy provided in a legislative enactment is exclusive unless a private cause of action is specifically authorized, and the Court of Appeals should not require cities to impose a financial remedy on themselves where the cities have assumed a duty not required by statute.

ACTIONS — CIVIL RIGHTS — HOME RULE CITIES — CITY CHARTERS — DISCRIMINATION.

A private civil action for damages exists for the violation of a provision in the charter of a home rule city that prohibits some type of discrimination that is not already prohibited by statute, even if the city charter and the implementing city ordinances provide an administrative remedy for such a violation.

*Macuga, Swartz and Liddle, P.C.* (by *Peter W. Macuga, II* and *David R. Dubin*), for the plaintiff.

*Valerie A. Colbert-Osamuede,* Assistant Corporation Counsel, for the defendant.

Before: HOOD, P.J., and SAWYER and CAVANAGH, JJ.

CAVANAGH, J. Plaintiff, Linda Mack, a police lieutenant with the police department of defendant the city

of Detroit, brought an action against defendant for employment discrimination in violation of the provisions of defendant's city charter. Defendant moved for summary disposition pursuant to MCR 2.116(C)(8), for failure to state a claim on which relief could be granted. The trial court granted defendant's motion, and plaintiff now appeals as of right. We reverse and remand.

Plaintiff, a single, white female, was hired by defendant as a police officer in 1974. In 1987, plaintiff was promoted to the rank of lieutenant. At one time, plaintiff held the position of acting inspector of the sex crimes unit of the police department. On February 6, 1998, plaintiff filed a complaint against defendant. Plaintiff alleged that she had been subjected to the romantic advances of male supervisors, but rebuffed those advances because she was a lesbian. Plaintiff further alleged that although plaintiff had filed complaints with her superiors regarding the harassment, defendant had failed to take any action.

In the complaint, plaintiff alleged that despite the fact that she had never been subject to disciplinary action, she was reassigned from serving as an officer in charge of a squad to desk duty and answering telephones on the afternoon shift. As a result of the reassignment, plaintiff was no longer allowed to participate in investigations or otherwise be involved in cases. Plaintiff claimed that this reassignment of duties was discriminatory and a form of harassment, which had not occurred in the past with any other officer at the rank of lieutenant. Plaintiff also alleged that she was the only supervisor in her section limited to taking two weekends off per month, which she

argued was also a discriminatory policy directed only at her.

Plaintiff's cause of action against defendant included two counts: (1) intentional infliction of emotional distress,[1] and (2) violation of defendant's city charter. In the latter count, plaintiff alleged that defendant's city charter prohibited discrimination based on both gender and sexual orientation. Plaintiff claimed that she was discriminated against contrary to the city charter for being a woman and a lesbian. Plaintiff did not allege that her rights were violated under the Civil Rights Act (CRA), MCL 37.2101 *et seq.*; MSA 3.548(101) *et seq.*

Defendant filed a motion for summary disposition pursuant to MCR 2.116(C)(8), for the failure to state a claim on which relief could be granted. With regard to plaintiff's discrimination claim, defendant argued that its city charter did not provide plaintiff with a cause of action. In response, plaintiff argued that the Declaration of Rights section of defendant's charter specifically prohibited discrimination based on "sex or sexual orientation." She further argued that, under the city charter, she had a private cause of action.

The court granted defendant's motion on the record for the following reasons:

> Well, in looking at this, we are going to grant the motion for summary disposition. . . .

> * 	 * 	 *

> With regard to the charter, the charter violation with regard to sexual orientation, this isn't the first time I've heard this issue come up and I have ruled in the past and

---

[1] The trial court dismissed plaintiff's claim of intentional infliction of emotional distress on summary disposition and plaintiff has not challenged that portion of the trial court's ruling.

am ruling now that the City charter does not create the cause of action.

Until the Appeals Court gives us some guidance on the issue, then that will be the position of the court. Right now there hasn't been an appellate ruling on the issue and in looking at the language in the charter, it doesn't appear to this court to create a separate cause of action apart from or over and above what's contained in the Elliott Larsen Act.

Therefore we will grant defendant's motion.

The issue before this Court is whether the trial court erred in granting defendant's motion for summary disposition after holding that defendant's city charter did not provide plaintiff with a cause of action to recover for defendant's alleged discrimination. A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone. This Court reviews de novo a trial court's decision on a motion for summary disposition pursuant to MCR 2.116(C)(8) to determine whether the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. All factual allegations supporting the claim, and any reasonable inferences or conclusions that can be drawn from the facts, are accepted as true. *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998).

Plaintiff's claim is based upon the following provision in defendant's city charter:

DECLARATION OF RIGHTS

\*          \*          \*

2. The city has an affirmative duty to secure the equal protection of the law for each person and to insure equality

of opportunity for all persons. No person shall be denied
the enjoyment of civil or political rights or be discriminated
against in the exercise thereof because of race, color,
creed, national origin, age, handicap, sex, or sexual orienta-
tion. [Detroit Charter, Declaration of Rights, ¶ 2.]

At the present time, the CRA does not protect citi-
zens from discrimination based on sexual orientation,
although it does provide protection from discrimina-
tion based on sex. *Barbour v Dep't of Social Services*,
198 Mich App 183, 185; 497 NW2d 216 (1993); MCL
37.2102(1); MSA 3.548(102)(1). Therefore, plaintiff
does not have an available remedy under state law for
alleged discrimination based on sexual orientation.
However, through the above provision of defendant's
charter, defendant adopted an additional category for
protection from discrimination not found in the CRA,
that being protection against discrimination based on
sexual orientation. While defendant adopted a policy
against discrimination based on sex or sexual orienta-
tion, it did not clearly adopt any ordinances or code
provisions expressly allowing for a civil action or an
award for damages based on a violation of the
charter.

Whether plaintiff has a private cause of action
under defendant's charter is a question of statutory
interpretation. See *Lane v KinderCare Learning Cen-
ters, Inc*, 231 Mich App 689, 695; 588 NW2d 715
(1998). Statutory interpretation is a question of law
that is reviewed de novo on appeal. *Oakland Co Bd of
Co Rd Comm'rs v Michigan Property & Casualty
Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751
(1998). "The prevailing rules regarding statutory con-
struction . . . extend to the construction of home rule
charters." *Detroit v Walker*, 445 Mich 682, 691; 520

NW2d 135 (1994). "When the language of a charter provision is unambiguous and specific it is controlling. . . . If a charter provision is ambiguous it must still be interpreted in a manner consistent with reason and with the goal of determining the purpose and intent of the framers and public." *Detroit Fire Fighters Ass'n v Detroit*, 127 Mich App 673, 677; 339 NW2d 230 (1983).

Whether a particular statute creates a private cause of action is a question of legislative intent. *Boscaglia v Michigan Bell Telephone Co*, 420 Mich 308, 317; 362 NW2d 642 (1984).

> Generally, when a statute creates a new right or imposes a new duty, the remedy provided by the statute to enforce the right, or for nonperformance of the duty, is exclusive. *Pompey v General Motors Corp*, 385 Mich 537, 552; 189 NW2d 243 (1971). Where the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has no private cause of action to enforce the right unless (1) the statute expressly creates a private cause of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions. [*Lane, supra* at 695-696, citing *Long v Chelsea Community Hosp*, 219 Mich App 578, 583; 557 NW2d 157 (1996).]

As a general proposition, where remedies provided by statute for violation of a right have no counterpart in the common law, the statutory remedies are exclusive rather than cumulative. *Driver v Hanley (After Remand)*, 226 Mich App 558, 566; 575 NW2d 31 (1997).

In the case at bar, defendant's city charter and ordinances provide plaintiff with a remedy by allowing her to file a complaint with the Human Rights Department. The Human Rights Department and Human

Rights Commission were established pursuant to Detroit Charter, art 7, ch 10, §§ 7-1001, 7-1002. The duties of the Human Rights Department include the following:

> Investigate complaints of unlawful discrimination against any person because of race, color, creed, national origin, age, handicap, sex, or sexual orientation in violation of any ordinance or any law within the city's jurisdiction to enforce; and secure equal protection of civil rights without discrimination. The city shall implement this section by ordinance. The human rights department may cooperate with other civil rights agencies in the resolution of complaints where jurisdiction is concurrent . . . . [*Id.*, § 7-1004.]

Defendant has adopted ordinances to implement the duties of the Human Rights Department. See Detroit Code, § 27-1-1 *et seq.* However, plaintiff's remedies pursuant to these provisions appears to be limited to securing findings by the department concerning discrimination, an order from the department to cease and desist in discriminatory activity, and an order requiring affirmative action.

It is apparent that defendant's charter and ordinances have granted plaintiff a remedy. The question is whether that remedy was intended to be the exclusive remedy available to redress discrimination claims. In another section of the charter, Detroit Charter, art 7, ch 10, § 7-1007, the charter provides that the remedies addressed in chapter 10 regarding human rights are not exclusive: "This chapter shall not be construed to diminish the right of any party to direct any immediate legal or equitable remedies in any court or other tribunal." From this section, it is apparent that defendant did not intend to make the

remedies available under its charter or ordinances the exclusive means of redress for affected persons.

Although the general rule is that where a new right or duty is created by statute, the remedy provided for enforcement of the right or duty by the statute is exclusive, courts have found exceptions to this general rule when the rights infringed were civil rights. Moreover,

> Michigan has a long history of stalwartly defending individuals from invidious discrimination in their pursuit of basic civil liberties, such as equal opportunity in the pursuit of employment. Unlike federal law, Michigan also has an unwavering history of faithfully defending an aggrieved individual's right to a judicial forum to remedy unlawful discrimination. [*Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405, 414; 550 NW2d 243 (1996) (opinion of CAVANAGH, J.).]

In fact, our Supreme Court has stated that civil rights claims should be given the "highest priority." *Holmes v Haughton Elevator Co*, 404 Mich 36, 46; 272 NW2d 550 (1978). The importance of the protection of citizens' civil rights in Michigan is indeed longstanding. In 1890, our Supreme Court held in *Ferguson v Gies*, 82 Mich 358, 364-365; 46 NW 718 (1890), that a private restaurant owner's rule requiring black persons to sit in a separate area of the restaurant violated the common law of Michigan, as well as the civil rights act of 1885, 1885 PA 130. Furthermore, the Court held that the plaintiff had a right to pursue a private civil suit for damages even though the statute did not provide a specific right of action for civil damages. The Court reasoned that the statute merely codified the common law, under which the plaintiff's "right of action for any injury arising from an unjust

discrimination against him is just as perfect and
sacred in the court as that of any other citizen." *Id.* at
365.

In subsequent cases, our Supreme Court reaffirmed
that where illegal discrimination has occurred, the
victim has a right to bring an action for damages,
even in the absence of a statutory remedy. See *St
John v General Motors Corp*, 308 Mich 333, 336-337;
13 NW2d 840 (1944) (gender discrimination); *Bolden v
Grand Rapids Operating Corp*, 239 Mich 318, 328;
214 NW 241 (1927) (racial discrimination).

In *Pompey v General Motors Corp, supra* at 542,
the plaintiff claimed racial discrimination under the
Fair Employment Practices Act and the Michigan
Constitution. One of the arguments raised by the
defendant was that the plaintiff's claim was within the
exclusive jurisdiction of the Michigan Civil Rights
Commission. *Id.* at 543. The Court rejected the argu-
ment that the Civil Rights Commission had exclusive
jurisdiction in the matter and concluded that the
plaintiff could avail himself of the cumulative judicial
remedy of a civil action for damages. *Id.* at 551.

In its reasoning, the Court recognized that at com-
mon law there was no remedy for racial discrimina-
tion and that ordinarily this meant that the remedy
set forth in any statute creating a new right was the
exclusive remedy available for violation of that right.
*Id.* at 552. However, the Court found that there was a
history of applying an exception to this rule where
civil rights legislation was involved:

> For reasons presently given, we reject defendant's argu-
> ments that the Civil Rights Commission's jurisdiction in this
> area is exclusive, and conclude that plaintiff may avail him-

self of a cumulative judicial remedy in vindication of this specific civil right.

Our reasons for so holding are immersed in the origins of plaintiff's asserted civil right. In 1955, the fair employment practices act created a civil right in the opportunity to obtain employment without discrimination because of race, color, religion, national origin or ancestry. Defendant contends, and we agree, that prior to the passing of this important legislation in 1955, there was in Michigan no recognized legal remedy for acts of discrimination based on race in private employment. While a right of action was recognized for racial discrimination in public accommodation and in the enjoyment of various other civil rights, the right to be free from discrimination on account of race in private employment was not regarded as a civil right entitled to protection of the law.

We recognize that the fact that there was no pre-existent common-law remedy for racial discrimination in private employment is generally highly significant in determining the exclusiveness of the statutory remedy. The general rule, in which Michigan is aligned with a strong majority of jurisdictions, is that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive. Correlatively, a statutory remedy for enforcement of a common-law right is deemed only cumulative.

But courts have forged exceptions to these general rules when the statutory rights infringed were civil rights. Although there is some authority to the contrary most decisions have held that a person aggrieved by the violation of a civil rights statute is entitled to pursue a remedy which will effectively reimburse him for or relieve him from violation of the statute, notwithstanding the statute did not expressly give him such right or remedy. [*Id.* at 551-553 (citations omitted).]

The Court went on to discuss earlier cases in Michigan that supported finding that a civil action for damages could be brought where a party's civil rights are

at issue. The Court concluded that its decisions in *Ferguson*, *Bolden*, and *St John* supported a holding that such a civil remedy existed, although those cases involved statutes that provided for only criminal remedy. *Pompey, supra* at 553-557. In a footnote, the Court stated that an aggrieved person was entitled to a cumulative civil remedy for damages regardless of the form the civil rights statute took, whether it provided only for a criminal remedy, no remedy, or any other remedy. *Id.* at 556-557, n 18.

The Court in *Pompey* then reviewed the remedies available to the plaintiff and found that, while the Civil Rights Commission had jurisdiction and could provide a remedy, there was no intent apparent from the legislation or from comments made at the constitutional convention that the remedy before the Civil Rights Commission was meant to be the exclusive remedy. *Id.* at 557-559. In fact, there was a clear statement contained in Const 1963, art 5, § 29, that the creation of the Civil Rights Commission did not intend to displace any judicial remedies an individual may have. *Pompey, supra* at 558. The Court then held as follows: "We hold that plaintiff can maintain a civil damage action for redress of his statutorily created right to be free from discrimination in private employment, and that this remedy may be pursued in addition to the remedial machinery provided by statute." *Id.* at 560. See also *Heurtebise, supra* at 421-426; *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118, 167-168; 596 NW2d 208 (1999) (opinion of CAVANAGH, J., dissenting).

*Pompey* has been extended to other types of civil liberties. For example, in *Holmes v Haughton, supra* at 42-43, the Court held that *Pompey* extends to age

discrimination claims and not just racial discrimination claims. However, *Pompey* has not been extended to claims not involving civil rights. See *Lamphere Schools v Lamphere Federation of Teachers*, 400 Mich 104, 126, n 9; 252 NW2d 818 (1977).

We conclude that *Pompey* is applicable to this case. Equal opportunity in the pursuit of employment is a protected civil right. Michigan's Constitution of 1963 provides:

> No person shall be denied the equal protection of the laws; nor shall any person be denied the enjoyment of his civil or political rights or be discriminated against in the exercise thereof because of religion, race, color or national origin. The legislature shall implement this section by appropriate legislation. [Const 1963, art 1, § 2.]

"The Address to the People explained that a primary mission of this provision was to ensure equal opportunity in the pursuit of employment." *Heurtebise, supra* at 427. The right against discrimination in the pursuit of employment is also protected by the CRA:

> The opportunity to obtain employment, housing and other real estate, and the full and equal utilization of public accommodations, public service, and educational facilities without discrimination because of religion, race, color, national origin, age, sex, height, weight, familial status, or marital status as prohibited by this act, is recognized and declared to be a civil right. [MCL 37.2102(1); MSA 3.548(102)(1).]

Thus, there is an express civil right to be free from discrimination in employment based on one's sex. Furthermore, defendant voluntarily extended these protections to a new class, those who are discriminated against based on their sexual orientation, by

enacting the declaration of rights section of its city charter. In its charter, defendant declared that "[n]o person shall be denied the enjoyment of civil or political rights or be discriminated against in the exercise thereof because of race, color, creed, national origin, age, handicap, sex, or sexual orientation." Plaintiff thus had a right under defendant's charter not to be discriminated against in her employment with defendant based on her sex or sexual orientation. Therefore, in light of our Supreme Court's ruling in *Pompey* and this state's history of defending individuals from invidious discrimination in their pursuit of basic civil liberties, such as equal opportunity in the pursuit of employment, we conclude that plaintiff is entitled to pursue a civil action for damages against defendant for any wrongful discrimination in her employment based on plaintiff's sex or sexual orientation in violation of defendant's city charter in addition to seeking redress from defendant's Human Rights Department. The trial court erred in granting defendant summary disposition under MCR 2.116(C)(8).

Reversed and remanded for further action consistent with this opinion. We do not retain jurisdiction.

HOOD, P.J., concurred.

SAWYER, J. (*dissenting*). I respectfully dissent.

The resolution of this case hinges on the question whether the Supreme Court's holding in *Pompey v General Motors Corp*, 385 Mich 537; 189 NW2d 243 (1971), can be extended to city charter provisions. Unlike the majority, I am unwilling to make such an extension.

In *Pompey, supra* at 552-553, the Court recognized the general rule followed in Michigan:

The general rule, in which Michigan is aligned with a strong majority of jurisdictions, is that where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive. *Thurston* v *Prentiss*, 1 Mich 193 (1849); *In re Quinney's Estate*, 287 Mich 329 [283 NW 599 (1939)]; *Lafayette Transfer & Storage Co* v *Michigan Public Utilities Commission*, 287 Mich 488 [283 NW 659 (1939)]. Correlatively, a statutory remedy for enforcement of a common-law right is deemed only cumulative.

The Court, *id.* at 553, went on to recognize that exceptions have been recognized in the civil rights area:

But courts have forged exceptions to these general rules when the statutory rights infringed were civil rights. Although there is some authority to the contrary most decisions have held that a person aggrieved by the violation of a civil rights statute is entitled to pursue a remedy which will effectively reimburse him for or relieve him from violation of the statute, notwithstanding the statute did not expressly give him such right or remedy.

Thus, the *Pompey* Court ultimately concluded that the plaintiff could maintain a civil damage action for violation of his statutorily created right to be free from employment discrimination. *Id.* at 560.

However, before even reaching the question whether *Pompey* should be extended to rights created under a city charter, plaintiff and the majority base their positions on an unsupported assumption: that a city charter can even create a private cause of action. Neither plaintiff's brief nor the majority's opinion points to any authority for the proposition that a city charter (or ordinance for that matter) can even

explicitly create a right to a private cause of action,[1] much less an implicit one under an extension of *Pompey.*

The Court in *Bivens v Grand Rapids*, 443 Mich 391, 396; 505 NW2d 239 (1993), commented concerning that question, though ultimately concluding that it need not address it. In *Bivens*, the plaintiff was injured while riding her bicycle on a city sidewalk. She sued the city and the owner of the property that adjoined the allegedly defective sidewalk. The trial court dismissed the suit against the property owner, concluding it had no duty of care to an individual user of the public sidewalk. Thereafter, the city filed a third-party complaint against the property owner, seeking indemnification for any damages it might have to pay the plaintiff and alleging that the property owner breached its duty under the city ordinance to maintain the sidewalk. The trial court again granted summary disposition in favor of the landowner, concluding that the ordinance did not create a private right to recover against the landowner. *Id.* at 394.

Ultimately, the Court ruled in favor of the landowner because it found that the city lacked the authority under its charter to impose by ordinance an

---

[1] The majority's opinion suggests that *Lane v KinderCare Learning Centers, Inc*, 231 Mich App 689; 588 NW2d 715 (1998), stands for the proposition that it is a question of statutory interpretation whether plaintiff has a cause of action under defendant's charter. In fact, *Lane* involved the question whether a cause of action existed under a state statute, specifically the child care organizations act, MCL 722.111 *et seq.*; MSA 25.358(11) *et seq. Lane, supra* at 695.

Furthermore, plaintiff's reliance on *Detroit Fire Fighters Ass'n v Detroit*, 449 Mich 629; 537 NW2d 436 (1995), is similarly misplaced. *Detroit Fire Fighters* did not involve a question whether the Detroit city charter created a private cause of action for damages. Rather, it was a mandamus action seeking to compel the city's mayor to take action.

obligation on abutting landowners to indemnify the city. However, the Court did comment that there was a more general underlying question to the case, but one that it need not address:

> Notwithstanding the final sentence of ordinance 4.84, which purports to allow any person injured on a defective sidewalk to bring a civil action against the abutting property owner, the trial court ruled, as already noted, that plaintiff's complaint failed to state a cause of action against the [property owner]. *Because that decision was not appealed, the question whether a city may create such a private cause of action is not squarely before us.* [*Id.* (emphasis added).]

I do not believe that this statement in *Bivens* "strongly implied" that a city does not have such power as defendant argues in its brief. However, I do believe that it indicates that it is hardly obvious that a city possesses such power and that it suggests that the Supreme Court is not willing to simply assume that such power exists.

This is a key point because the majority's conclusions rest on the assumption that such power exists. However, if a city cannot explicitly create a private cause of action, then it cannot do it implicitly either. I am unwilling to make the assumption that a city possesses the power to create a private cause of action. Therefore, absent a showing that a city possesses such a power, I am also unwilling to conclude that defendant's city charter creates a private cause of action for employment discrimination by defendant.

Furthermore, even assuming that a city possesses the authority to create a cause of action by charter or ordinance, I am unwilling to extend the holding in *Pompey* from state statutes to city charters and ordi-

nances. As discussed above, *Pompey* recognized that the general rule is that, where no right existed at common law, a statutory right has only those remedies provided for in the statute that created the right. *Pompey* crafted a narrow exception to that rule where state civil rights statutes are concerned. I see nothing in the *Pompey* decision that suggests an intent by the Supreme Court to apply that exception more broadly so as to encompass city charters and ordinances. It is one thing to say that our state courts will imply a remedy for a state statute of general applicability. It is quite another thing to imply a remedy for a city charter or ordinance with limited applicability, particularly when it deals with a right that the state had the opportunity to create, but chose not to adopt. I would leave it to the Supreme Court to extend *Pompey* if it so chooses.

Additionally, we must tread carefully before creating remedies that may not have been intended or envisioned by the drafters of the city charter or ordinance. Implying unintended remedies may well have the effect of chilling attempts by a city to assume duties beyond that imposed by the state. That is, defendant may have been willing to impose on itself a duty not to discriminate based on sexual orientation, establishing a mechanism to ensure that it does not so discriminate and administrative remedies in the event that such discrimination occurs. However, we should not assume that it would have been willing to impose such a duty on itself if it also had to allow the remedy of financial damages. While a city may be willing to assume a duty if it merely has to provide administrative remedies for a violation of that duty, it may be unwilling to voluntarily assume that duty if it

is required to also provide financial remedies for a violation.

What the majority is essentially telling cities is: We applaud you for extending civil rights beyond the state statute. However, we are going to make you subject to financial damages for violating that self-imposed duty. So, if you want to avoid exposure to financial remedies, you better not extend civil rights protections beyond that provided for by statute.

I think, however, that discouraging, rather than encouraging, cities to embrace civil rights protections represents poor public policy. But more to the point, it is not the proper role of this Court to make such a public policy determination.

Accordingly, I would uphold the grant of summary disposition for defendant for the following reasons: (1) it has not been established that a city possesses the authority to create a private cause of action, (2) I would leave it to the Supreme Court to decide if *Pompey* should be extended to city charters and ordinances, and (3) this Court should not require cities to impose a financial remedy on themselves for assuming a duty not required by statute, rather than just imposing other, administrative remedies.

For these reasons, I would affirm the decision of the trial court.